Lynne M. Fischman Uniman (LU 6750)
Arthur Felsenfeld (AF 3532)
Cassandra Porsch (CP 4452)
ANDREWS KURTH LLP
450 Lexington Avenue
New York, NY 10017
(212) 850-2800
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

DAVID GILMORE, a shareholder of
Covington Fabrics Corp. a/k/a Covington
Industries, Inc., and its successor, Cele
Holdings, Inc., two New York corporations,
and a limited member of CIRS, LLC, a limited
liability company organized under the laws of
South Carolina, and a limited member of
Gilmore Holdings, LLC, a New York limited
liability company, suing individually and in
the right of Cele Holdings, Inc. CIRS, LLC,
and Gilmore Holdings, LLC,

                             Plaintiff,

    - against -

ABBY GILMORE, ARTHUR FREIERMAN
and SOUTHBRIDGE FINANCIAL CORP.,

                          Defendants.

-------------------------------------------------------- X

Case No. 09-CV-6230-WHP

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Preliminary Statement | 1 |
| II. | Legal Standard | 4 |
| III. | Plaintiff's Proposed Amended Claims Are Time-Barred | 6 |
| IV. | The Doctrine of Equitable Estoppel Is Inapplicable | 11 |
| V. | Plaintiff's Proposed Amendments Also Fail to State a Claim | 18 |
| | A. Common Law Fraud | 18 |
| | B. RICO | 19 |
| | C. Breach of Fiduciary Duty | 20 |
| VI. | The Proposed Amendments Must Also Be Denied As Prejudicial and Unduly Delayed | 21 |
| VII. | Conclusion | 22 |

NYC:215047.1

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Abercrombie v. Andrew College*, 438 F. Supp. 2d 243 (S.D.N.Y. 2006) ..................11, 12, 17

*Aequitron Medical, Inc. v. CBS, Inc.*,
    No. 93 Civ. 950, 1994 WL 414361 (S.D.N.Y. August 5, 1994) ......................................4

*American Mobile Communications, Inc. v. Nationwide Cellular Service, Inc.*,
    No. 91 Civ. 3587, 1992 WL 232058 (S.D.N.Y. Sept. 3, 1992) ......................................21

*Armstrong v. McAlpin*, 699 F.2d 79 (2d Cir.1983) ....................................................................9

*Asbedian v. New York City Human Resources Admin.*,
    2 F. Supp. 2d 397 (S.D.N.Y. 1998) .............................................................................10

*BRS Associates, L.P. v. Dansker*, 246 B.R. 755 (S.D.N.Y. 2000) .......................................6, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) ......................................5

*Burns v. Martinez*, No. 08 Civ. 4835, 2008 WL 5429644 (S.D.N.Y. Dec. 24, 2008) ..............4

*Chainani v. Dime Savings Bank FSB*,
    No. 94 Civ. 7549, 1996 WL 622031 (S.D.N.Y Oct. 28, 1996) ......................................7

*Cement & Concrete Workers District Council Welfare Fund v. Lollo*,
    148 F.3d 194 (2d Cir. 1998).........................................................................................19

*Department of Econ. Development v. Arthur Andersen & Co.*,
    747 F. Supp. 922 (S.D.N.Y.1990) ...............................................................................17

*Dluhos v. Floating and Abandoned Vessel, Known as New York*,
    162 F.3d 63 (2d Cir. 1998)............................................................................................4

*Figueroa v. City of New York*,
    No. 07 Civ. 11333, 2008 WL 4185848 (S.D.N.Y. Sept. 4, 2008) ..................................5

*Franco v. Roman Catholic Diocese of Las Vegas*,
    No. 19617/08, 2009 WL 1777146 (Sup. Ct. N.Y. Co. June 23, 2009)...........................17

*Heins v. Potter*, 271 F. Supp. 2d 545 (S.D.N.Y. 2003) ...............................................................9

*Jenkins v. New York State Banking Department*,
    No. 07 Civ. 6322, 2009 WL 585851 (S.D.N.Y. Mar. 6, 2009) ......................................5

*Klein v. Bower*, 421 F.2d 338 (2d Cir. 1970)............................................................................8

NYC:215047.1

*Lopez v. John Hancock Mutual Life Insurance Co.*,
    115 F.R.D. 316 (S.D.N.Y. 1987) ................................................................5

*Manigaulte v. C.W. Post of Long Island University*,
    659 F. Supp. 2d 367 (E.D.N.Y. 2009) ....................................................5, 18

*In re MBIA Inc.*, No. 05 Civ. 03514, 2007 WL 473708 (S.D.N.Y. Feb. 14, 2007)................11

*Merck & Co. v. Reynolds*, __ U.S. __, 130 S. Ct. 1784 (2010) .................................................7

*In re NTL, Inc. Securities Litigation*, 244 F.R.D. 179 (S.D.N.Y. 2007)................................14

*National Grp. for Comm'ns & Computers Ltd. v. Lucent Technologies Inc.*,
    420 F. Supp. 2d 253 (S.D.N.Y. 2006) ........................................................6

*Netzer v. Continuity Graphic Associates, Inc.*,
    963 F. Supp. 1308 (S.D.N.Y. 1997)...........................................................11

*Pomeroy v. Schlegel Corp.*, 780 F. Supp. 980 (W.D.N.Y. 1991) ............................................8

*Ruso v. Morrison*, 695 F. Supp. 2d 33 (S.D.N.Y. 2010)........................................................12

*Sotheby's, Inc. v. Minor*,
    No. 08 Civ. 7694, 2009 WL 3444887 (S.D.N.Y. Oct. 26, 2009) ...............5, 20

*Starter Corp. v. Converse, Inc.*,
    No. 95 Civ. 3678, 1996 WL 684165 (S.D.N.Y. Nov. 26, 1996) ....................5

*Statistical Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468 (S.D.N.Y. 2000) ...................9

*Sumitomo Electric Research Triangle, Inc. v. Corning Glass Works*,
    109 F.R.D. 627 (1986) ...............................................................................5

*Tenamee v. Schmukler*, 438 F. Supp. 2d 438 (S.D.N.Y. 2006) .............................................17

*THC Holdings Corp. v. Tishman*,
    No. 93 Civ. 5393, 1996 WL 291881 (S.D.N.Y. May 31, 1996).....................19

*The City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526 (S.D.N.Y. 2005) ....................18

*Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23 (2d Cir. 2002)......................................6

*Weizmann Institute of Science v. Neschis*, 229 F. Supp. 2d 234 (S.D.N.Y. 2002) .................12

*Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732 (S.D.N.Y. 1997).......................6, 17

*Wynne v. Equilease Corp.*,
    No. 94 Civ. 4992, 1995 WL 764236 (S.D.N.Y. Dec. 27, 1995)....................11

NYC:215047.1

## STATE CASES

*Bayuk v. Gilbert*, 57 A.D.3d 227, 868 N.Y.S.2d 645 (1st Dep't 2008) ....................................17

*Dunkin' Donuts of America, Inc. v. Liberatore*,
    138 A.D.2d 559, 526 N.Y.S.2d 141 (2d Dep't 1988) ....................................................18

*General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125 (1966) ........................................................17

*Kidder, Peabody & Co., Inc. v. McArtor*,
    223 A.D.2d 502, 637 N.Y.S.2d 99 (1st Dep't 1996) .......................................................10

*Lama Holding Co. v. Smith Barney, Inc.*,
    88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996) ............................................18

*M&A Oasis, Inc. v. MTM Associates, L.P.*, 307 A.D.2d 872 (1st Dep't 2003) .........................9

*Rite Aid Corp. v. Grass*, 48 A.D.3d 363, 854 N.Y.S.2d 1 (1st Dep't 2008) .....................10, 12

*Sheppard v. Advanced Acoustic Concepts, Inc.*,
    No. 2926-09, 2009 WL 142780 (Sup. Ct. Nassau Co. Jan. 21, 2009) ..............................7

*TMG-II v. Price Waterhouse & Co.*, 175 A.D.2d 21 (1st Dep't 1991) .......................................7

*Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (N.Y. 2006) ...............................................................12

NYC:215047.1

Defendants Abby Gilmore ("A. Gilmore"), Arthur Freierman ("Freierman") and Southbridge Financial Corp. ("Southbridge" and collectively, "Defendants"), by their attorneys Andrews Kurth LLP, respectfully submit this memorandum of law in opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint (the "Motion").[1]

## I.
## <u>Preliminary Statement</u>

In a case which underscores the purpose of statutory limitations periods, Plaintiff seeks leave to file a Proposed Second Amended Verified Complaint ("PSAC") to add allegations based on six asset transactions undertaken by Covington Industries Inc. ("Covington," or the "Company") 11 to 16 years ago. The existing Complaint, which has already been amended once, focuses on a limited number of discrete transactions which took place during the 2005 to 2009 timeframe. The baseless nature of his existing claims having been demonstrated during discovery, Plaintiff now manufactures additional allegations to try to salvage his case. He proposes to add 16 pages of allegations of improper payments to Defendant Southbridge during the period 1994 through 1999. The proposed amendments are thoroughly futile as barred by the statute of limitations, fail to state a claim, would cause significant prejudice to Defendants at this stage of the litigation so long after the events at issue, and because Plaintiff has unduly delayed bringing such claims.

Recognizing that his proposed amended claims fall far outside any conceivable limitations period, Plaintiff fills his moving papers with puffery and untruths to malign Defendants and persuade this Court that his belated and specious claims should be permitted

---

[1]    In his letter to the Court requesting a pre-motion conference and at the conference itself, Plaintiff requested that Itkowitz & Harwood be permitted to serve as counsel to the Receiver in this action. The Court directed Plaintiff to file a Motion seeking such relief on the same day he was required to serve his Motion for Leave to Amend. Because such request has not been included in Plaintiff's briefing or otherwise filed, we presume that it has been abandoned.

pursuant to the discovery rule or the doctrine of equitable estoppel. Plaintiff is a college professor with degrees from Ivy League universities who made nearly $1 million in salary for his one day per week check signing duties as Secretary of Covington from the time A. Gilmore became President of the Company until the time it was sold. Affidavit of Abby Gilmore, sworn to July 21, 2010 ("A. Gilmore Aff."), at ¶ 8. He also received over $3.25 million in after-tax distributions from the Company during the time A. Gilmore was in control until the Company was sold in 2006. A. Gilmore Aff. at ¶ 8. Plaintiff would have this Court believe that he is incapable of understanding financial or business matters, which is simply not true. A. Gilmore Aff. at ¶ 2. Yet, Plaintiff protests that the statute of limitations shouldn't apply to his new allegations because the Defendants had "superior learning," he "wasn't aware" and "couldn't have known" of the terms of the relevant transactions at the time and he "doesn't recall" signing the checks for fees he now claims to be fraudulent.

Unfortunately for Plaintiff, the statute of limitations does not excuse idleness and apathy. His proposed amended claims are untimely as a matter of law because the relevant statutes of limitations begin to run when a plaintiff discovered or with reasonable diligence should have discovered the basis for his claims. Plaintiff was on notice of his purported claims at numerous times beginning in 1994, and had actual notice on August 23, 2007. A. Gilmore Aff. at ¶ 20. Plaintiff attended Board meetings at which the relevant transactions and company financials were explained and discussed. A. Gilmore Aff. at ¶¶ 9, 11, 12, 16. Further, he signed almost all Company checks, including checks to Southbridge. A. Gilmore Aff. at ¶ 17; Affidavit of Roger Gilmartin, ("Gilmartin Aff.") sworn to July 19, 2010, at ¶ 4. In addition, two of the asset purchase agreements ("APAs") for which Plaintiff alleges Southbridge received improper "finder's fees" specifically disclosed that Southbridge was receiving fees. PSAC ¶¶ 55, 71.

Merely because Plaintiff did not care to further investigate or even inquire at the time does not mean that he can now bring stale claims 11 to 16 years later.

Furthermore, Plaintiff cannot take advantage of the doctrine of equitable estoppel because he does not allege the prerequisites for the doctrine: namely, the PSAC does not contain any allegations that Defendants committed affirmative wrongdoing to prevent Plaintiff from bringing suit, nor does Plaintiff allege that he justifiably relied upon such actions or that he has diligently pursued his claims. To the contrary, Plaintiff states in his Declaration that he began questioning Southbridge fees in 2007 and hired attorneys to further investigate. In August 2007, Freierman sent Plaintiff a detailed explanation of Southbridge's fees together with a copy of the memo setting forth the formula for calculating fees for Southbridge's role in the transactions. A. Gilmore Aff. at ¶ 20. Though armed with this information, Plaintiff did nothing until 2010.

Plaintiff's proposed amendments are also futile because they fail to state claims for relief for common law fraud, RICO violations, or breach of fiduciary duty. Reasonable reliance is an essential element of both common law fraud and RICO mail and wire fraud claims. The PSAC does not allege that Plaintiff (or anyone else) relied upon the statements in the four relevant APAs that there were no "finders" used in connection with the transactions. To the extent Plaintiff alleges that Defendants merely omitted to tell him at Board Meetings about the fees paid to Southbridge, such allegations cannot support a common law fraud claim because reliance on such omission would not have been reasonable given the means available to Plaintiff to inquire further, nor can it support a RICO claim because there is no predicate act of mail or wire fraud. There is also no claim for breach of fiduciary duty based on the proposed amendments because pursuant to her Employment Agreement with the Company, A. Gilmore had no duty to disclose,

let alone itemize, the fees being paid to Southbridge, and any failure to do so cannot form the basis for a breach of fiduciary duty claim.

Finally, allowing amendment at this stage of the litigation where document discovery is substantially complete, two of the Covington shareholders have already been deposed and significant documents from the 1990's that Defendants would use to defend against the claims are unavailable, would be highly prejudicial to Defendants.  Also, Plaintiff has unduly delayed prosecuting these claims for years.  Accordingly, the proposed amendments should be denied.

## II.
## Legal Standard

"It is within the sound discretion of the district court to grant or deny leave to amend." *Burns v. Martinez*, No. 08 Civ. 4835, 2008 WL 5429644, at *2 (S.D.N.Y. Dec. 24, 2008). "[T]he district court may deny leave for 'any good reason,'" *id.*, which includes undue delay, bad faith or dilatory motive, undue prejudice to the opposing party, or futility of the proposed amendment.  *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998).  Here, the proposed amendments should be denied as futile, prejudicial, and unduly delayed.

Futility exists where the proposed amended claims would not survive a motion to dismiss for failure to state a claim upon which relief can be granted, on statute of limitations grounds or otherwise.  *Burns*, 2008 WL 5429644, at *2.  *See also Aequitron Medical, Inc. v. CBS, Inc.*, No. 93 Civ. 950, 1994 WL 414361, at *2 (S.D.N.Y. August 5, 1994) (holding that "[i]t has long been established in this Circuit that an amendment which seeks to include time-barred claims is futile. A court does not have to wait for a motion to dismiss, and waste judicial time and resources, but may instead deny a motion to amend to add time-barred claims as futile").

4

According to the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), a complaint must contain sufficient factual allegations to state a claim for relief "that is plausible on its face" in order to defeat a motion to dismiss.  *See Manigaulte v. C.W. Post of Long Island University*, 659 F. Supp.2d 367, 377 (E.D.N.Y. 2009) (citing *Twombly* as the applicable standard for futility in the context of a motion to amend a complaint).  Further, a claim cannot be "plausible" for *Twombly* purposes "where the underlying claim is barred by a statute of limitations."[2] *Figueroa v. City of New York*, No. 07 Civ. 11333, 2008 WL 4185848, at *1 (S.D.N.Y. Sept. 4, 2008).   The proposed amended claims here are futile as barred by the statute of limitations and fail to state a claim, and should not be permitted.  *See Sotheby's, Inc. v. Minor*, No. 08 Civ. 7694, 2009 WL 3444887, at *11 (S.D.N.Y. Oct. 26, 2009) (noting that where proposed claims were futile, it was unnecessary to address other grounds in opposition to a motion to amend).

Also, a motion to amend should be denied where the opposing party would be prejudiced. *Jenkins v. New York State Banking Dep't*, No. 07 Civ. 6322, 2009 WL 585851, at *3 (S.D.N.Y. Mar. 6, 2009).  Prejudice exists where the new claims would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute.  *Starter Corp. v. Converse, Inc.*, No. 95 Civ. 3678, 1996 WL 684165 (S.D.N.Y. Nov. 26, 1996).  Here, the proposed amended claims would vastly expand and transform the scope and nature of this litigation, require significant additional document discovery which may be impossible to obtain, and require re-deposition of witnesses and myriad additional witnesses such as the auditors who examined and disclosed related party transactions,

---

[2]    Notably, cases cited by Plaintiff on the standard for leave to amend pre-date *Twombly*.  *See, e.g., Sumitomo Elec. Research Triangle, Inc. v. Corning Glass Works*, 109 F.R.D. 627 (1986); *Lopez v. John Hancock Mut. Life Ins. Co.*, 115 F.R.D. 316 (S.D.N.Y. 1987).

outside professionals involved in the transactions, the CFO and Controller of the Company, and the Company's warehouse manager.  Plaintiff's Motion should be denied on this basis alone.

## III.
## Plaintiff's Proposed Amended Claims Are Time-Barred

Reaching back sixteen years, the PSAC attempts to manufacture new bases for RICO, common law fraud, and breach of fiduciary duty claims.  However, civil RICO claims are subject to a four-year statute of limitations beginning "when the plaintiff discovers or should have discovered the RICO injury." *Nat'l Grp. for Comm'ns & Computers Ltd. v. Lucent Technologies Inc.*, 420 F. Supp.2d 253, 264 (S.D.N.Y. 2006) quoting *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 35 (2d Cir.2002).  The statute of limitations for common law fraud is either six years from the commission of the fraud or two years from actual or imputed discovery of the fraud.  *BRS Associates, L.P. v. Dansker*, 246 B.R. 755, 772 (S.D.N.Y. 2000) (applying New York law).  Claims for breach of fiduciary duty are governed by a three or six year statute of limitations starting from the time of the alleged breach, depending on the nature of the claim. *See Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732, 743 (S.D.N.Y. 1997) citing CPLR §§ 213(1), 213(7), 214(4).  The purported fraudulent acts and fiduciary breaches in the form of allegedly undisclosed transaction fees to Southbridge occurred from 1994 through 1999, *see* PSAC at ¶¶ 39-76, and the "injuries" in the form of payments would also have occurred during this time period.  Because all of these fall outside of even the longest of these limitations periods, the proposed amendments are futile.

To get around the statutes of limitations, Plaintiff preposterously argues that he could not have discovered these claims until March 2010, after document discovery in this case was complete. *See* Motion at 20-21.  Even if the discovery rule applied, Plaintiff's claims would still be untimely.  It is "knowledge of *facts*, not precise legal theories, that triggers inquiry and the

running of the statute of limitations." *Chainani v. Dime Savs. Bank FSB*, No. 94 Civ. 7549, 1996 WL 622031, at *5 (S.D.N.Y Oct. 28, 1996) (emphasis in original); *Sheppard v. Advanced Acoustic Concepts, Inc.* No. 2926-09, 2009 WL 142780, at *7 (Sup. Ct. Nassau Co. Jan. 21, 2009) citing *TMG-II v. Price Waterhouse & Co.,* 175 A.D.2d 21, 23 (1st Dep't 1991) (same).[3]

Here, there were numerous instances where Plaintiff, the Vice President and Secretary of Covington with a fiduciary duty to the Company, was put on actual and/or inquiry notice of the now complained of payments made to Southbridge. These include:

- An October 17, 1994 Memo (the "October 1994 Memo") from A. Gilmore to Plaintiff, Michael and Karen Gilmore entitled "Growth Strategy for Covington" setting forth the details of the closing of the Spectrum Acquisition, including a listing of $100,000 for Closing Costs. *See* October 1994 Memo, attached as Exhibit D to the A. Gilmore Aff. These Costs included the complained of fees paid to Southbridge for financial advisory services in connection with the transaction.

- Disclosure of the terms of the fee arrangement with Southbridge on December 28, 1994, to Hy Shwiel of Ernst & Young, who came to numerous Covington Board Meetings to explain Company financials (the "Shwiel Memo"). A. Gilmore Aff. at ¶ 9. Officers other than A. Gilmore, such as Roger Gilmartin, were aware of this fee arrangement. *See* Shwiel Memo, attached as Exhibit 4 to PSAC; Gilmartin Aff. ¶ 10.

---

[3]   Plaintiff cites *Merck & Co. v. Reynolds*, __ U.S. __, 130 S. Ct. 1784, 1798 (2010), for the proposition that "the discovery of facts that put a plaintiff on 'inquiry notice' does not automatically begin the running of the limitations period." This case is irrelevant here. Plaintiff himself concedes that this case is limited to discovery under the Securities Exchange Act of 1934 as specifically codified in that statute, and does not purport to address the discovery rule under New York state law or the RICO statute. *See Merck*, 130 S. Ct. at 1798 (rejecting "'inquiry notice' as the standard generally" because the court could not "reconcile it with *the statute, which simply provides that* 'discovery' is the event that triggers the 2-year limitations period) (emphasis added). The applicable statute of limitations for fraud here, CPLR § 213, specifically provides that "the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, *or could with reasonable diligence have discovered it.*" CPLR § 213[8] (emphasis added). The civil RICO statute does not specifically provide an applicable limitations period. In *Agency Holding Corp. v. Malley-Duff Assoc., Inc.*, 483 U.S. 143 (1987) the Court set the limitations period at four years and the Second Circuit in *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1102-03 (2d Cir. 1988), *cert. den.,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989) held that a RICO action accrues against a defendant on the date that the plaintiff "discovers or should have discovered" the injury. Thus, the inquiry notice standard is applicable.

NYC:215047.1

- Invoices for payments to Southbridge were approved by Covington's Controller and CFO, to whom all Covington officers and directors had access at any time, including at Board Meetings. Gilmartin Aff. ¶ 4.

- Payments to Southbridge were reflected as "Transactions With Related Parties" in the 1999 and 2000 audited financial statement, which Plaintiff and all other Board members received. *See* Combined Financial Statements, Covington Industries Inc. and Affiliate, Years ended May 31, 2000 and 1999, Section 15, attached as Exhibit J to A. Gilmore Aff. The Combined Financial Statements disclosed total amounts paid of $298,000 and $300,000 to Related Parties in these two years.

- The transactions giving rise to these payments were regularly discussed in contemporaneous Board meetings, at which the Board expressly authorized Freierman/Southbridge's services in connection with such transactions. *See* Board Meeting Minutes, attached to A. Gilmore Aff. as Ex. F.

- The transaction documents for the various acquisitions were always available on Covington premises for director and officer review. Gilmartin Aff. at ¶ 8.

- The Fame APA disclosed payments to Southbridge: neither party "employed any broker or finder <u>other than Southbridge Financial Corp.</u> or incurred any liability for any brokerage or finder's fees or commissions or similar payments to <u>any other person</u>…" PSAC at ¶ 55 (emphasis added).

- The Rapier APA states: "Purchaser shall pay an agreed-upon fee to [Southbridge] which shall satisfy all obligations to [Southbridge] in connection therewith." PSAC at ¶ 71.

- Plaintiff, whose chief duty to Covington was to sign checks, signed most of the checks payable to Southbridge. Gilmartin Aff. at ¶ 4. *See also* Covington checks to Southbridge signed by Plaintiff, attached as Exhibit M to A. Gilmore Aff.

- Plaintiff admits receiving a copy of the Shwiel Memo on August 23, 2007 from Arthur Freierman explaining fees paid to Southbridge. *See* D. Gilmore Decl. ¶ 25.

The statute of limitations does not "await [a plaintiff's] leisurely discovery of the full details of [an] alleged scheme." *Pomeroy v. Schlegel Corp.*, 780 F. Supp. 980, 983 (W.D.N.Y. 1991) quoting *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir. 1970). "Instead, once the plaintiff has information sufficient to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the

fraud will be imputed to him." *Id.* quoting *Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983) (emphasis added).[4]  The above information would have put any person of ordinary intelligence, let alone a college professor, on notice to inquire further.

Michael Gilmore (who, if anything, was less involved in Covington's business affairs than Plaintiff) admitted at his deposition that he assumed that Southbridge was getting paid for the work it was doing for Covington (*see* Michael Gilmore Deposition Transcript ("M. Gilmore Tr.") at 176-177, attached as Exhibit H to A. Gilmore Aff.) and that as members of the Board of Directors, he and his siblings should have been more "conscientious" about obtaining specific information. (M. Gilmore Tr. 175-176).  He added, "it was part of my duty.  I should have asked what he [Freierman] was being paid." (M. Gilmore Tr. 177).  Karen Gilmore, acknowledged that "it was clear that [Southbridge] was employed in regard to acquisitions" and that A. Gilmore had discussed with the Board "the idea that [Southbridge] would be leading the search for companies

---

[4] Plaintiff's citation to *Heins v. Potter*, 271 F. Supp.2d 545, 554 (S.D.N.Y. 2003) for that proposition that "the law of accrual is concerned with plaintiff's knowing he has suffered an injury, not with any other facts that might support his cause of action" does not vitiate the concept of inquiry notice.  *Heins* specifically notes that a plaintiff's claim accrues when he "knows or should have known of his injury," and then discusses the basic fraudulent concealment doctrine.  *See Heins*, 271 F. Supp.2d at 554.  As discussed herein, Plaintiff does not, because he cannot, plead any facts adequately alleging fraudulent concealment of his purported causes of action.  Furthermore, *M&A Oasis, Inc. v. MTM Assocs., L.P.*, 307 A.D.2d 872 (1st Dep't 2003), which found that a fraud claim was not discoverable until the defendants produced a particular document showing facts which were otherwise unavailable, is inapplicable here because Plaintiff always had access through the Company books, records and transaction documents to the facts he now alleges in the PSAC.  A plaintiff arguing fraudulent concealment must show not only that the defendants wrongfully concealed information but also that such concealment prevented their discovery of the nature of their claim.  *See Statistical Phone Philly v. NYNEX Corp.*, 116 F. Supp.2d 468, 482-83 (S.D.N.Y. 2000).  "Otherwise, every fraudulent concealment claim would result in tolling.  The question is whether plaintiff knew enough to sue... The fact that plaintiffs may not have had all the facts pertinent to their claims is of no consequence." *Id.*

9

to acquire." *See* Karen Gilmore Deposition Transcript ("K. Gilmore Tr."), attached as Exhibit G to A. Gilmore Aff., at 123-124.

Plaintiff's argument that inquiry notice arose only when he received copies of invoices because it was only then that he "had evidence that finder's fees had been paid", *see* Motion at 20-21, must be rejected. *See Asbedian v. New York City Human Resources Admin.,* 2 F. Supp.2d 397, 399-400 (S.D.N.Y. 1998) (noting that the statute of limitations does not wait for plaintiff "to gather information to substantiate his claim"). His further contention that he could not have discovered the basis for his claims until document discovery in this case was complete turns the concept of inquiry notice on its head. *See Rite Aid Corp. v. Grass*, 48 A.D.3d 363, 364, 854 N.Y.S.2d 1, 2 (1st Dep't 2008) (fraud claim concerning defendant's undisclosed acquisition of stock was barred by the statute of limitations where the plaintiff had inquiry notice of its claim from its own financial records and communications dating back to 1994); *Kidder, Peabody & Co., Inc. v. McArtor*, 223 A.D.2d 502, 503, 637 N.Y.S.2d 99, 100 (1st Dep't 1996) (churning claim involving alleged personal gain by the securities dealer through excessive trading activity ran from the date when respondents were on notice, warranting inquiry, of the potential claim by receipt of trade confirmations and monthly statements rather than from the date of the last trade; thus, claim was properly dismissed as time-barred). In particular, Plaintiff had inquiry notice of his purported claims, *inter alia*, when he received the October 1994 Memo and the 1999/2000 Combined Financial Statements for the Company (which Plaintiff admits he received) disclosing "Related Party Transactions" in amounts far exceeding any single transaction fee that had been paid to Southbridge. Such amounts were of sufficient magnitude to make a reasonable person of ordinary intelligence inquire further. *See* 1999/2000 Combined Financial Statements, attached as Exhibit J to A. Gilmore Aff., at Section 15. Notably, the PSAC alleges concealment only

10

"continuing through 1999." *See* PSAC ¶138(a).  This allegation begs the question why Plaintiff did nothing about his proposed claims until eleven years later.  Furthermore, the email Plaintiff received from Freierman in 2007 setting forth Southbridge fees and attaching the Shwiel Memo put him on actual notice of the complained of fees.  *See* Email transmitting Shwiel Memo, attached as Exhibit P to A. Gilmore Aff.

Finally, Plaintiff's argument that a determination on inquiry notice is inappropriate at this juncture is incorrect.  Where the facts needed to determine whether the plaintiff was on actual and/or inquiry notice of his claims "can be gleaned from the complaint and papers…integral to the complaint," resolution of the issue may occur at the pleading stage as a matter of law.  *In re MBIA Inc.*, No. 05 Civ. 03514, 2007 WL 473708, at *7 (S.D.N.Y. Feb. 14, 2007) (citations omitted).  *See also, e.g., BRS Associates, L.P. v. Dansker*, 246 B.R. 755, 771 (S.D.N.Y. 2000) (finding claims time-barred due to inquiry notice as a matter of law on a motion to dismiss for failure to state a claim); *Wynne v. Equilease Corp.*, No. 94 Civ. 4992, 1995 WL 764236, at *10 (S.D.N.Y. Dec. 27, 1995) (finding claim time-barred due to inquiry notice and dismissing it at pleading stage).  Thus, Plaintiff's proposed amendments should be disposed of now.

## IV.
## The Doctrine of Equitable Estoppel Is Inapplicable

Recognizing that even the discovery rule does not save his proposed claims, Plaintiff attempts to grasp on to the doctrine of equitable estoppel by making absurd accusations that Defendants sought to destroy pertinent documents.  As a preliminary matter, the doctrine of equitable estoppel is appropriate only in "extraordinary circumstances" where "egregious wrongdoing" by a defendant prevents a plaintiff from bringing suit.  *Netzer v. Continuity Graphic Associates, Inc.*, 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997).  *See also Abercrombie v. Andrew College*, 438 F. Supp.2d 243, 265 (S.D.N.Y. 2006) (noting that under New York law,

equitable estoppel is a "doctrine to be 'invoked sparingly and only under exceptional circumstances'").  The equitable estoppel doctrine also does not override a plaintiff's duty of inquiry.  *See Rite Aid Corp.*, 48 A.D.3d 363, at 364-65 ("We also reject plaintiffs' claim of equitable estoppel, as this doctrine will not toll a limitations statute where plaintiffs possessed timely knowledge sufficient to have placed them under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable statute of limitations").

A Plaintiff seeking the benefit of the equitable estoppel doctrine must properly allege that it was "induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (N.Y. 2006).  Further, the Plaintiff must allege affirmative wrongdoing which is separate and apart from that forming basis for the underlying claims. *Abercrombie*, 438 F. Supp.2d at 265.  In addition, "even if a plaintiff sufficiently alleges misconduct by a defendant, the plaintiff also is required to allege that justifiable reliance upon the misrepresentation was the reason for failing to timely commence the action." *Id.* at 266.  The justifiable reliance element here incorporates the concept of inquiry notice, such that "[a]ll that is needed to commence the running of the statute is 'knowledge of facts' sufficient 'to suggest to a person of ordinary intelligence the probability that he has been defrauded.'" *Id.* (citations omitted).  *See also Ruso v. Morrison*, 695 F. Supp.2d 33, 46-47 (S.D.N.Y. 2010) ("where a plaintiff possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable statute of limitations, there can be no justifiable reliance, and equitable estoppel is inapplicable").  Finally, the Plaintiff has the burden to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel itself.  *Weizmann Inst. of Science v. Neschis*, 229 F. Supp.2d 234, 252 (S.D.N.Y. 2002).

Here, Plaintiff fails at the very first element to adequately allege entitlement to equitable estoppel. The PSAC nowhere alleges that Plaintiff was induced by fraud, misrepresentations or deception to refrain from bringing his proposed amended claims concerning the asset purchases in a timely manner. The best Plaintiff can muster is a 2005 ordinary course of business memo by Lorraine Schultz, an executive secretary at Covington, to Covington department heads that states:

> In preparation for the relocation of our offices later this quarter, we will begin the process of cleaning up our files tomorrow morning. Starting with the files stored in the basement, you should determine which files, records, and materials are to be (1) prepared for moving to our new NYC offices; (2) sent to storage in Spartanburg; (3) discarded… Nothing should be discarded without your [the department heads] express authorization. Before authorizing any disposals, please note that we are required by law to retain specific records and files as per the following list…

*See* Exhibit 4 to D. Gilmore Decl. Plaintiff preposterously claims that this memo, written in 2005, four years before the commencement of this litigation and in conjunction with a move by the Company to much smaller quarters, "shows that Defendants destroyed the checks paying such finder's fees, as well as related invoices." Motion at 23. *See also Motion* at 12, 21 (stating that this memo "evidences" that Defendants destroyed copies of checks to Southbridge). This contention is so absurd that it needs no response; the memo is clear on its face.

Plaintiff also makes the wild accusation that Defendants' prior counsel "designated" the Covington boxes currently being stored in the Hauppauge warehouse "for destruction." *See* Motion at 7, 21. Again, this is a shameless falsehood. As this Court will recall, Plaintiff, though seeking to be appointed Receiver, has complained bitterly about storage costs of the 712 boxes that were moved from South Carolina to a storage facility in Hauppauge. In an effort to reduce Plaintiff's costs, Defendants' prior counsel sent an email to Plaintiff's counsel on August 10, 2009, stating that there were "a large number of Cele/Covington documents which [would] have

13

to be shipped" and proposing that they agree on discarding documents prior to a particular date, such as 2003.

Oddly, copies of the specific checks for the complained-of fees to Southbridge have mysteriously disappeared from copies of Covington checks under the control of Plaintiff as Receiver. Since Plaintiff signed the vast majority of all Covington checks, *see* Gilmartin Aff. at ¶ 4, Defendants believe that such checks would likely show that Plaintiff signed them, thus demonstrating that he had actual notice at the time such payments were made. A Stipulation entered into between the parties requires each side to give the other two days' notice before accessing any of the materials at the warehouse where Covington documents are being stored. *See* Stipulation attached as Exhibit 3 to Declaration of Jay B. Itkowitz ("Itkowitz Decl."). While Defendants have been complying with this Stipulation and have been monitored by someone from Plaintiff's counsel's firm every time they visited the warehouse or Plaintiff's counsel's office, Plaintiff and his counsel visited the warehouse on more than one occasion without notifying the Defendants, have unfettered access to Company files at their offices and have removed boxes from the warehouse and rearranged their contents. *See* A. Gilmore Aff. at ¶ 18. To date, Plaintiff's counsel has failed to adequately account for a discrepancy in the number of boxes shown as being delivered to the warehouse on the bill of lading, the number currently in the warehouse, and the number sent to their offices. While there are many Covington checks still in boxes, those relating to the disputed fees are not there. Accordingly, it is Defendants who may be entitled to an adverse inference that the missing checks were signed by Plaintiff and gave him notice of his purported claims. *See In re NTL, Inc. Secs Litig.*, 244 F.R.D. 179, 192 (S.D.N.Y. 2007) (noting that an adverse inference that missing evidence supports the claim or defense of the party seeking such evidence may be granted where, *inter alia*, the party having control over

14

the evidence has an obligation to preserve it and the missing evidence is relevant to the party's claim or defense).

Further, even if Plaintiff had alleged any wrongdoing preventing him from bringing his claims, he cannot allege justifiable reliance or due diligence in pursuing his claims. Plaintiff concedes that Freierman sent him an accounting of Covington fees paid to Southbridge, including a copy of the Shwiel Memo in 2007. D. Gilmore Decl. at ¶ 26. He further concedes that he engaged two different attorneys in 2007 to investigate "all compensation paid to Defendants by the Gilmore Companies." D. Gilmore Decl. at ¶ 26. Considering that Plaintiff engaged two attorneys to dig up potential claims against Defendants, there can be no credible argument that he "justifiably relied" on any statements or non-disclosures by Defendants that would have prevented him from bringing suit from that point forward, or that he was diligent in pursuing his purported claims. Moreover, Plaintiff's allegation that Defendants withheld documents from him is blatantly false. Contrary to Plaintiff's allegations that he was "stonewalled" by Defendants, as a shareholder, Plaintiff was always free to examine Company books and records. The books and records covering the time period of the proposed amendments were still available in the Company warehouse during the time Plaintiff was asking for materials. *See* A. Gilmore Aff. at ¶ 20. In any event, the documents to which Plaintiff falsely claims he was denied access were books and records for Cele Holdings, Inc. ("Cele") (*see* December 19, 2007 letter from Plaintiff's counsel Larry Hutcher, claiming that his client was being denied access to Cele books and records, attached as Exhibit 3 to D. Gilmore Decl.). Cele, the Company's successor, only had documents from 2006 forward—irrelevant to the 1994-1999 timeframe of the proposed amendments. Moreover, Plaintiff was not denied access to Cele books and records, which were kept in Southbridge's offices (shared with Plaintiff's current

wife) after Covington was sold.  *See* A. Gilmore Aff. at ¶ 20.  Defendants did stop writing memos to Plaintiff in late 2007 when they became weary of his vituperative personal attacks. *See* A. Gilmore Aff. at ¶ 20.

Plaintiff attempts to make much of the fiduciary relationship between Defendants and the Company and their duty of disclosure to avail himself of the equitable estoppel doctrine.  *See* Motion at 23-23.  First, while Defendants agree that they were fiduciaries to the Company, as was Plaintiff, Freierman was not counsel to the Company or the Board of Directors.[5]  *See* A. Gilmore Aff. at ¶ 5; Gilmartin Aff. at ¶ 9.  At all relevant times, Covington was represented by outside counsel in the complained of transactions and had in-house General Counsel to advise the Company and the Board.  *See* Gilmartin Aff. at ¶ 9; A. Gilmore Aff at ¶ 5.  Each of Plaintiff, Michael Gilmore and Karen Gilmore also had personal attorneys who advised them of their rights with respect to the Company at various junctures.  A. Gilmore Aff. at ¶ 5.  K. Gilmore even testified that she knew Covington's own in-house General Counsel and did not think that Freierman was legal counsel to the Company.  K. Gilmore Tr. at 195-198, attached as Ex. C to A. Gilmore Aff.

In addition, pursuant to A. Gilmore's Employment Agreement with Covington, which memorialized the Company's practices with respect to hiring employees and consultants, she had an absolute right to pay outside consultants to the Company up to $350,000 per year, adjusted for cost of living, without notice to Company directors.  *See* Employment Agreement at Section 8, attached as Exhibit 2 to PSAC.  Even Plaintiff does not allege that the fees paid to Southbridge exceeded the permissible amounts, which they did not.  A. Gilmore Aff. at ¶ 7.  In any event,

---

[5] To the extent the Answer, which was drafted by prior counsel, implies otherwise, this was an error.  Defendants will seek leave to amend the Answer if necessary.

NYC:215047.1

contrary to Plaintiff's suggestion, the mere fact that Defendants were fiduciaries does not automatically mandate the application of equitable estoppel. *See Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732, 746-47 (S.D.N.Y. 1997) (applying New York law) ("[i]f, as plaintiff argues, the only requirement for equitable estoppel is nondisclosure of a claim by a fiduciary, then constructive fraud claims, which by their very nature involve nondisclosure of a fiduciary, automatically would qualify for equitable estoppel in virtually every case... Certainly this was not the result intended or foreseen by the New York Legislature and courts").

Finally, the application of equitable estoppel may be determined as a matter of law where the plaintiff has clearly failed to adequately allege entitlement to it.[6] *Abercrombie*, 438 F. Supp.2d at 265 (finding equitable estoppel to be inadequately pled and dismissing claims as barred by the statute of limitations); *Tenamee v. Schmukler*, 438 F. Supp.2d 438, 444 (S.D.N.Y. 2006) (rejecting equitable estoppel defense and granting motion to dismiss time-barred claim); *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 747 F. Supp. 922, 943 (S.D.N.Y.1990) (dismissing cause of action because plaintiff made no allegation in complaint that "its failure to timely institute its third-party action was due to its justified reliance upon a misrepresentation" by opposing party); *Bayuk v. Gilbert*, 57 A.D.3d 227, 228, 868 N.Y.S.2d 645, 646 (1st Dep't 2008) (rejecting equitable estoppel defense in context of a motion to amend a complaint with claims that were otherwise time-barred); *Franco v. Roman Catholic Diocese of Las Vegas*, No. 19617/08, 2009 WL 1777146, at *2 (Sup. Ct. N.Y. Co. June 23, 2009) (holding that "[e]ven by

---

[6] Plaintiff's reliance on *General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 128 (1966) for the proposition that equitable estoppel is a triable issue is misplaced. In that case, the Defendant had been convicted of and admitted criminal theft and concealing such crime. Thus, the Court would not allow the Defendant to rely on the equitable estoppel defense as a matter of law. *See General Stencils*, 18 N.Y.2d at 128 (stating that "the admitted thievery of defendant entitles plaintiff to litigate the issue of equitable estoppel").

the permissive standards of a pre-answer motion to dismiss, the contents of plaintiff's complaint and supporting documents cannot sustain the defense of equitable estoppel").  Thus, Plaintiff's claims are futile because they are barred by the statute of limitations.

**V.**

**Plaintiff's Proposed Amendments Also Fail to State a Claim**

*A.*     *Common Law Fraud*

Plaintiff's proposed amendments are also futile because they do not support colorable claims for relief.  *See Manigaulte*, 659 F. Supp.2d at 377 (citing *Twombly*, 550 U.S. at 570).  To state a claim for fraud under New York law, a plaintiff must show that a misrepresentation or omission of a material fact was relied upon by the plaintiff, and that the plaintiff then suffered injury as a result of said reliance.  *The City of New York v. Cyco.Net, Inc.*, 383 F. Supp.2d 526, 564 (S.D.N.Y. 2005) citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996).  Plaintiff attempts to state fraud claims based upon representations in four APAs that no "finder" had been used in connection with those transactions.  *See* PSAC at ¶¶ 44, 49, 61, 66.  However, the PSAC then alleges that "Plaintiff never saw the Fame APA, (nor, for that matter, any of the other closing statements)."  PSAC ¶ 56 (emphasis added).  (The PSAC further alleges that "[u]pon information and belief, none of the other shareholders saw the Fame APA either."  PSAC ¶ 56.)  Plaintiff cannot possibly have relied upon statements in agreements that he freely admits he never saw.

Furthermore, reliance for fraud purposes must be reasonable.  To the extent Plaintiff attempts to state a claim for fraud based upon purported omissions concerning fees paid to Southbridge, (*e.g.,* PSAC at ¶ 41), such reliance cannot be reasonable as a matter of law when Plaintiff had the means readily available to him to discover the "omitted" information.  *See Dunkin' Donuts of Am., Inc. v. Liberatore*, 138 A.D.2d 559, 526 N.Y.S.2d 141, 141 (2d Dep't

18

1988) (noting that "New York law prohibits parties from proving reasonable reliance, and consequently, fraud," where the plaintiff fails to use "the means available to him of knowing by the exercise of ordinary intelligence the truth"). Here, such means, as set forth at length above, included, *inter alia*, constant accessibility to Company officers, attendance of Company auditors at Board meetings, availability of the transaction documents for the complained of asset purchases on-site at Covington, discussions of the transactions at Board meetings, and Plaintiff's signing of almost all Company checks. Thus, the proposed amendments, to the extent they attempt to state a claim for common law fraud, must be denied as futile.

B.      *RICO*

        The proposed amendments also fail to state claims for RICO violations. A RICO claim premised on mail or wire fraud as predicate acts requires adequate allegations of reliance. *Cement & Concrete Workers District Council Welfare Fund v. Lollo*, 148 F.3d 194, 197 (2d Cir. 1998). The PSAC does not allege that <u>anyone</u> relied upon the statements in the four APAs that stated that there had been no "finder" used in connection with the transactions. In fact, it is alleged that no one ever saw them. PSAC ¶¶ 56, 71. Further, any purported omissions at Company Board meetings regarding fees paid to Southbridge (*see* PSAC at ¶ 41) were in person and could not involve mail or wire fraud as predicate act for RICO.

        Moreover, allegations of reliance on a misrepresentation or omission for RICO purposes must be the "but for" cause of the plaintiff's injuries. *THC Holdings Corp. v. Tishman*, No. 93 Civ. 5393, 1996 WL 291881, at *5 (S.D.N.Y. May 31, 1996) (dismissing RICO claim where the plaintiff did not allege how it would have avoided its injuries if it had known about alleged omissions). The PSAC makes the totally unsubstantiated allegation that "Plaintiff never would have consented to the Asset Purchase Agreements or the finder's fees has such fees and their amounts been disclosed. Upon information and belief, the other shareholders likewise would not

have consented to such finder's fees." PSAC ¶ 42.  First, the Gilmores' receipt of the October 1994 Memo refutes Plaintiff's claim that "[h]ad Plaintiff and his siblings known that Freierman and his company, Southbridge, were going to be paid finder's fees in the event the acquisitions were consummated…the acquisitions would never have been approved," *see* Motion at 9.  They received disclosure at the time of the full economics of the Spectrum deal, including closing costs, yet didn't object to them.  *See* A. Gilmore Decl. at ¶¶ 11-12.  Second, neither Michael Gilmore nor Karen Gilmore, in their depositions or otherwise, ever said they would not have approved the relevant transactions.  Third, this causation allegation is insufficient because Plaintiff did not have sufficient voting power on the Company Board to block transactions.  Indeed, it would have been completely illogical to forego transactions that stood to benefit the Company in the millions of dollars to save the tiny fraction of these amounts Southbridge received in fees, especially because the Company would have had to pay such fees to another financial advisor had Southbridge not performed this function.  *See* A. Gilmore Aff. at ¶ 14.

C.   *Breach of Fiduciary Duty*

The proposed amendments do not support a claim for breach of fiduciary duty for the simple reason that A. Gilmore had no duty to seek permission from or even notify Company directors to engage and make payments to Southbridge.  As described above, A. Gilmore's Employment Agreement, which memorialized prior Company practice, did not require notifying the Board to hire "any employee or consultant" who did not receive "annual compensation in excess of $350,000 yearly," adjusted for cost of living increases.  *See* Employment Agreement at Section 8, attached as Exhibit 2 to PSAC.  Southbridge never received the full amount permitted under the Employment Agreement.  A. Gilmore Aff. at ¶ 7.  In the absence of a breach, there can be no claim for breach of fiduciary duty.  *See Sotheby's*, 2009 WL 3444887, at *7.  Furthermore, claims for breach of fiduciary duty based on underlying fraudulent conduct must meet the

20

requisite pleading standards for reasonable reliance and causation. *See id.* citing *American Mobile Communications, Inc. v. Nationwide Cellular Service, Inc.*, No. 91 Civ. 3587, 1992 WL 232058, at *7 (S.D.N.Y. Sept. 3, 1992). Because, as discussed in the common law fraud and RICO sections above, the PSAC is defective as to these elements, the proposed amended claim for breach of fiduciary duty fails for this reason as well and should be denied.

**VI.**
**The Proposed Amendments Must Also Be Denied**
**As Prejudicial and Unduly Delayed**

The PSAC would drastically alter the scope and nature of this litigation from a complaint focusing on a limited number of discrete transactions during the 2005-2009 timeframe to a complaint making allegations of various transactions reaching back 16 years. After document discovery in this case has been substantially completed and documents from the 1990's that Defendants would use to defend against the proposed claims are unavailable,[7] allowing the proposed claims would be highly prejudicial. Furthermore, despite Plaintiff's suggestions to the contrary, the depositions that have occurred thus far in this case have not fully explored the allegations in the PSAC. While Plaintiff's counsel on cross-examination questioned two of the witnesses about some facts surrounding these allegations, Defendants' counsel did not, as, at that point, Plaintiff hadn't yet even moved to have those issues from the 1990's added to the case. In addition, the issues raised by the proposed amended claims would require many additional witnesses, including financial advisory experts, outside professionals who participated in the relevant transactions, and the Company Controller, CFO and warehouse manager, depositions of whom would significantly delay resolution of this case and vastly increase legal fees. *Starter Corp.*, 1996 WL 684165 at *5 (denying amendment as prejudicial where discovery would need

---

[7] *See supra* pages 14-15.

21

to be re-opened and trial would be delayed).  The Motion should also be denied because Plaintiff has unduly delayed in bringing the proposed amendments.  As discussed above, in addition to all the other earlier facts putting him on notice of his purported claims, Plaintiff had actual knowledge of the facts and hired lawyers to investigate potential claims against Defendants three years ago, yet didn't seek to prosecute these claims until now.

## VII.
## Conclusion

Based on the foregoing, Defendants respectfully request that Plaintiff's Motion for Leave to File the Proposed Second Amended Verified Complaint be denied, and that the Court grant such other and further relief as it deems just and proper.


Dated: New York, New York
      July 21, 2010

                         ANDREWS KURTH LLP

            By:

                         Lynne M. Fischman Uniman (LU 6750)
                         Arthur Felsenfeld (AF 3532)
                         Cassandra Porsch (CP 4452)
                         450 Lexington Avenue, 15th Floor
                         New York, New York  10017
                         212.850.2800

                         *Attorneys for Defendants*

22