UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
DAVID GILMORE,                      :

              Plaintiff,        :    09 Civ. 6230 (WHP)

    -against-                      :    MEMORANDUM & ORDER

ABBY GILMORE, et al.,               :

             Defendants.       :
------------------------------------X

WILLIAM H. PAULEY III, District Judge

        Plaintiff David Gilmore brings this action against his sister, Abby Gilmore, her husband, Arthur Freierman, and their closely-held financial services company, Southbridge Financial Corp., alleging common-law fraud, breach of fiduciary duty, breach of contract, and violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). The allegations in the First Amended Verified Complaint, dated December 18, 2009 (the "Complaint"), begin with events in 2004 and center on the sale of the Gilmore family business, Covington Industries, Inc. ("Covington"), in 2006. Plaintiff moves for leave to amend his Complaint to assert new claims relating to corporate acquisitions by Covington between 1994 and 1999. For the following reasons, Plaintiff's motion to amend is granted.

BACKGROUND

        In 1992, Plaintiff and his siblings inherited Covington, the family textile business. (Amended Complaint dated Dec. 1, 2009 ("Compl.") ¶ 17.) Between 1992 and 2006, when Covington was sold, Abby Gilmore served as the company's president, chief executive officer, and chairman of the Board of Directors. (Compl. ¶¶ 13, 46.) During that period, Arthur

Freierman served as vice president of Covington and president of Southbridge. (Compl. ¶ 14.)

The Complaint alleges that Abby Gilmore and Freierman engaged in a five-year scheme to defraud the other Gilmore children, looting the family business through self-dealing, overbilling, and deception. (See Compl.) The proposed Second Amended Complaint ("PSAC") expands the time horizon of the fraudulent scheme from five to fifteen years and includes a number of corporate acquisitions. Specifically, Plaintiff seeks to assert claims to recover finder's fees charged by Southbridge for Covington's acquisition of six companies between 1994 and 1999: Chelsea of London Limited ("Chelsea") on April 1, 1994; Spectrum Fabrics, L.P. ("Spectrum") on July 8, 1994; Tasco Industries, Inc. ("Tasco") on January 4, 1995; Fame Fabrics, Inc. and Spekto Export Corp. (collectively "Fame") on December 20, 1996; P. Kaufmann, Inc. ("Kaufmann") on May 7, 1998; and Rapier/Cambridge Mills, Inc. ("Rapier" and, collectively, the "Acquisitions") on January 6, 1999. (Proposed Second Amended Compl. ("PSAC") ¶¶ 39-40.) The "secret" finder's fee arrangement was memorialized in a "confidential" memorandum dated December 28, 1994 from Freierman to Abby Gilmore that was not copied to the other Gilmore siblings. (PSAC Ex. 4: Memorandum from Freierman to Abby Gilmore dated Dec. 28, 1994 ("December 1994 Memo") at 1.) While the December 1994 Memo proposed a fee arrangement for an acquisition that was not consummated, the memorandum characterized the proposal as a "general guideline going forward." (December 1994 Memo at 2.)

Plaintiff claims he did not see the December 1994 Memo until August, 2007, when Freierman sent it to him to justify Southbridge's fees. (Decl. of David Gilmore dated July 7, 2010 ("David Gilmore Decl.") ¶ 24.) Nevertheless, David Gilmore asserts that he was unaware of any finder's fee arrangement with Southbridge until March, 2010, when Defendants

2

produced invoices for services related to the Spectrum, Tasco, and Rapier acquisitions during discovery in this litigation. (David Gilmore Decl. ¶¶ 29-34; PSAC Ex. 5A: Southbridge Invoice to Covington dated Aug. 1, 1994 for $45,500; PSAC Ex. 5B: Southbridge Invoice to Covington dated Jan. 31, 1995 for $50,000; PSAC Ex. 5D: Southbridge Invoice to Covington dated Jan. 10, 1999 for $102,491.93.)

At the time of the transactions, the deal documents were available to Covington's directors and officers, including David Gilmore. (Aff. of Roger Gilmartin dated July 19, 2010 ¶ 8.) Those asset purchase agreements present an inconsistent picture. While the Tasco Asset Purchase Agreement provided:

> The Purchaser and the Seller represent and warrant to each other that no broker or finder was involved in the introduction of the parties hereto or the negotiation of the transactions contemplated hereby.

(PSAC ¶ 49), the Fame Asset Purchase Agreement alluded to Southbridge as follows:

> Neither the Purchaser nor anyone acting on its behalf has employed any broker or finder other than Southbridge Financial Corp. or incurred any liability for any brokerage or finder's fees or commissions or similar payments to any other person in connection with (i) any transaction contemplated under this Agreement or (ii) the sale or other disposition of any Acquired Assets.

(PSAC ¶ 55.) And the Rapier Asset Purchase Agreement was explicit about Southbridge's involvement:

> Purchaser has retained the services of Southbridge . . . in connection with this Agreement and the transactions contemplated hereby. Purchaser shall pay an agreed upon fee to [Southbridge] which shall satisfy all obligations to [Southbridge] in connection herewith.

(PSAC ¶ 71.) Plaintiff maintains that he "never saw" any of the asset purchase agreements and

3

relied entirely on the representations of Abby Gilmore and Freierman as to the material terms of the acquisitions. (PSAC ¶¶ 56, 72.)

DISCUSSION

I. Legal Standard

Federal Rule of Civil Procedure 15(a) governs motions to amend and provides that courts should "freely give leave when justice so requires." "[I]t is within the sound discretion of the district court to grant or deny leave to amend." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). A district court has discretion to deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy, 482 F.3d at 200; see also Foman v. Davis, 371 U.S. 178, 182 (1962). Defendants oppose further amendment on grounds that it would be futile, prejudicial, and cause undue delay.

II. Futility

An amendment is futile where it could be dismissed for failure to state a claim upon which relief may be granted. Milanese & Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2003). "It has long been established in this Circuit that an amendment which seeks to include time-barred claims is futile. A court does not have to wait for a motion to dismiss, and waste judicial time and resources, but may instead deny a motion to amend to add time-barred claims as futile." Aequitron Med., Inc. v. CBS, Inc., No. 93 Civ. 950 (SS), 1994 WL 414361, at *2 (S.D.N.Y. Aug. 5, 1994). However, when determining futility, a court must draw all reasonable inferences in the plaintiff's favor. See Jaghory v. N.Y. State Dep't of Educ., 131 F.3d

4

326, 329 (2d Cir. 1997). "'[I]f the plaintiff has at least colorable grounds for relief, justice . . . require[s permitting amendment] unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party.'" Lopez v. John Hancock Mut. Life Ins. Co., 115 F.R.D. 316, 317 (S.D.N.Y. 1987) (quoting Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 783 (2d Cir. 1984)).

Plaintiff's proposed amendment seeks to add common law fraud, breach of fiduciary duty, and RICO claims relating to transactions between 1994 and 1999. Under New York law, a claim for common law fraud must be brought "within six years from the time the cause of action accrued or within two years from the time the wrongdoing was, or with reasonable diligence should have been, discovered," whichever is longer. BRS Assocs., L.P. v. Dansker, 246 B.R. 755, 772 (S.D.N.Y. 2000) (citing Armstrong v. McAlpin, 699 F.2d 79, 87 (2d Cir. 1983)). Similarly, claims for breach of fiduciary duty are subject to a three or six year statute of limitations starting from the time of the alleged breach or, in certain cases, upon discovery. Whitney Holdings, Ltd. v. Givotovsky, 988 F. Supp. 732, 743 (S.D.N.Y. 1997). Civil RICO claims are subject to a four-year statute of limitations beginning "'when the plaintiff discovers or should have discovered the RICO injury.'" Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Techs., Inc., 420 F. Supp. 2d 253, 264 (S.D.N.Y. 2006) (quoting Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 35 (2d Cir. 2002)). Thus, the statutes of limitations on each claim, if counted from the date of injury, expired years ago and those claims can be saved only if the alleged wrongdoing was discovered later.

"Commencement of the statute [of limitations] does 'not await [plaintiff's] leisurely discovery of the full details of the alleged scheme.'" Emerson Elec. Co. v. Black & Decker, Inc., No. 96 Civ. 4334 (LAP), 1997 WL 666283, at *7 (S.D.N.Y. Oct. 27, 1997)

5

(quoting Klein v. Bower, 421 F.2d 338, 343 (2d Cir. 1970)). "[A] plaintiff[] need not be able to learn the precise details of the fraud, but [he] must be capable of perceiving the general fraudulent scheme based on the information available to [him]." Salinger v. Projectavision, Inc., 972 F. Supp. 222, 229 (S.D.N.Y. 1997). "Once plaintiff has notice of the fraud, '[he] is charged with whatever knowledge an inquiry would have revealed.'" Kottler v. Deutsche Bank AG, 607 F. Supp. 2d 447, 460 (S.D.N.Y. 2009) (quoting Foxley v. Sotheby's Inc., 893 F. Supp. 1224, 1231 (S.D.N.Y. 1995)).

      Plaintiff's proposed amended complaint raises factual questions as to when Plaintiff possessed information sufficient to put him on notice of the finder's fees paid to Southbridge. While the Fame and Rapier asset purchase agreements mention Southbridge, they did not specify what fees were paid. Moreover, Southbridge's involvement was not referenced in deal documents for the other acquisitions. These ambiguities, when combined with Plaintiff's allegations about representations made by Abby Gilmore and Freierman, create a question of fact regarding when Plaintiff had notice of the alleged fraud. See Nelson v. Stahl, 173 F. Supp. 2d 153, 166 (S.D.N.Y. 2001) (rejecting statute of limitations argument on motion to dismiss "because the question of whether plaintiffs should have discovered fraud earlier than they did, and thus whether the action is timely, is a question for the trier of fact"). Moreover, Plaintiff's receipt of the December 1994 Memo in 2007 does not resolve the issue because that memorandum is subject to interpretation—a classic jury question. Nelson v. Stahl, 173 F. Supp. 2d at 166; see also Black Radio Network, Inc. v. NYNEX Corp., 44 F. Supp. 2d 565, 583 (S.D.N.Y. 1999).

6

III. <u>Undue Delay & Prejudice</u>

Undue delay or prejudice are grounds for denying leave to amend. <u>See, e.g.</u>, <u>Lee v. Regal Cruises, Ltd.</u>, 916 F. Supp. 300, 303 (S.D.N.Y. 1996); <u>Starter Corp. v. Converse, Inc.</u>, No. 95 Civ. 3678 (CSH), 1996 WL 684165, at *4 (S.D.N.Y. Nov. 26, 1996). To determine whether the opposing party would be unduly prejudiced by the proposed amendment, a district court should "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2d Cir. 1993).

Defendants' argument on this score is a closer call. Discovery on the existing claims is closed. And, Plaintiff's proposed claims expand the timeframe at issue by ten years. If Plaintiff's amendment is permitted, discovery will be re-opened and resolution of this action delayed. Even so, the docket of this case is not particularly lengthy and Plaintiff claims to have discovered the additional fraudulent conduct only a few months ago, during discovery. While Defendants argue that some depositions will need to be reopened and other depositions concerning the acquisitions may be taken, that incremental burden is inflated. Defendants' suggestion that they will need to depose representatives of businesses that Covington acquired in the 1990s appears to be a red herring. This case, as framed by the proposed pleading, concerns an alleged fraud on David Gilmore by his sister Abby and her husband.

CONCLUSION

For the foregoing reasons, Plaintiff David Gilmore's motion for leave to file a second amended complaint is granted. Plaintiff is directed to serve and file his Second Amended Verified Complaint forthwith.

Dated: November 15, 2010
      New York, New York

                                  SO ORDERED:

                                  WILLIAM H. PAULEY III
                                        U.S.D.J.

*Counsel of Record:*

Jay B. Itkowitz, Esq.
Itkowitz & Harwood
305 Broadway, 7th Floor
New York, NY 10007
*Counsel for Plaintiff*

Lynne M. Fischman Uniman, Esq.
Andrews Kurth LLP
450 Lexington Avenue
New York, NY 10017
*Counsel for Defendants*