1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  DAVID GILMORE,

4              Plaintiff,          New York, N.Y.

5         v.                       09 Civ. 6230 (WHP)

6  ABBY GILMORE, et al.,,

7              Defendants.

8  ------------------------------x

9                                  June 16, 2011
                                   2:40 p.m.
10
   Before:
11
                  HON. WILLIAM H. PAULEY III,
12
                                   District Judge
13
                         APPEARANCES
14
   ITKOWITZ & HARWOOD
15      Attorneys  for Plaintiff
   BY:  JAY B. ITKOWITZ
16      SIMON REIFF

17
   BARTON BARTON & PLOTKIN
18      Attorneys for Defendants
   BY:  MATHEW E. HOFFMAN
19      JESSICA MARIA JIMENEZ

20

21

22

23

24

25

1        (Case called)

2        (In open court)

3        THE COURT:  Good afternoon.  This is a final pretrial

4   conference, but I have also received letters seeking permission

5   to make various motions.  Let's address the motions first.

6        Mr. Hoffman, it is a classic jury case.  It is a fraud

7   case.  Certainly we are not going to put the equitable claims

8   to the jury.  I will decide those.  But I can use the jury in

9   an advisory capacity if I decide to do that.  The plaintiff is

10  entitled to a jury trial on a fraud case.

11       So what's the point of making a motion on strike the

12  jury demand?

13       MR. HOFFMAN:  Your Honor, if I may respectfully

14  disagree with the Court.  Let me pose a case to the Court.

15  Imagine that I was about to invest, God forbid, with Bernie

16  Madoff at the time when people were doing that, and I had given

17  him a check.  The next morning I read in the paper about all

18  these problems, and I sought an injunction based on fraud

19  against his cashing the check, and I came running in and sought

20  an injunction.  Since I'm hopeful that I get my injunction, I

21  seek no other relief.

22       The gravamen of the case would be fraud, but the

23  relief sought would have been equitable.  If, for example, we

24  eventually got a preliminary injunction and then they fought me

25  and it was a permanent injunction request, at that point I

1    think the Court would agree with me, even though the gravamen

2    of the case, the nature of the case was fraud, the nature of

3    the relief would be equitable.

4          So it is our contention, your Honor and the Second

5    Circuit has so held --

6          THE COURT:  Let's talk about this case as opposed to

7    an imaginary Madoff case.

8          MR. HOFFMAN:  Yes, your Honor.

9          THE COURT:  The checks were cashed in this case.

10         MR. HOFFMAN:  No, your Honor.  Here's the difference.

11   What they are seeking from us is disgorgement of the money.

12   They are not seeking some damages that they suffered that has

13   nothing do with what we got.  They are seeking the exact same

14   relief, give us back the money and give us back all the money.

15         The important place to look here, your Honor -- you

16   will recall that I moved to compel on the interrogatories, and

17   the Court warned the plaintiffs that Mr. Hoffman would stand up

18   at the pretrial and said if the relief requested is not in your

19   interrogatories, then you are not getting it.

20         The relief they put down in their interrogatory answer

21   shows that on the fraud case what they want are exactly the

22   same numbers that they want in the disgorgement case.

23         So what we would argue to your Honor in a motion, and

24   the reason I believe the motion has merit, your Honor, with all

25   due respect to the Court's position, is that it is not whether

4

1   it is a fraud case that matters.  It's the nature of the

2   relief.  That's what the Supreme Court held in the Gian -- I

3   can't even say it, I apologize, your Honor, but the Supreme

4   Court case that we cited to the Court in the letter.  And that

5   is what the Second Circuit has indicated.

6          As a matter of fact, we gave you a case, your Honor,

7   in the letter which involved, it is a case that I think Judge

8   Stein had and it's the BVN case.  In that case, that was a

9   contract case, the Court held that since the relief sought was

10  equitable, that what was involved there was no jury trial.

11         Based on the holding of the Supreme Court in the case

12  that we've cited to you, the Gianfiana Sierra (phonetic) case,

13  the question is what relief is sought.  The answer is, although

14  they have broken it out into two in the interrogatories, it is

15  exactly the same relief.

16         They want back the same money that they want back in

17  disgorgement.  They don't have some damages expert who is going

18  to testify the corporation was damaged in this amount.  What

19  they are going to say is, we want the money back.

20         That is a disgorgement, that is equitable, that's what

21  the Second Circuit has held, and that is our motion.  I believe

22  I would not be wasting the Court's time if I did not believe

23  there was a valid basis, and if there was not case law to

24  support it.

25         THE COURT:  While they may characterize it as

1   disgorgement, that's the measure of their damages, isn't it?

2            MR. HOFFMAN:  The question is really, they are

3   saying -- they could have made a damage case, your Honor, that

4   said we got damaged by X amount.  But what they are saying is

5   give us back the money.

6            When you say give us back the money, you are saying

7   disgorge the money.  We want restitution.  Give us back what we

8   paid -- classic equitable remedies.  Therefore, not a jury

9   case.

10           I appreciate the Court's questions, because frankly,

11  when I first looked at this, I had all the same concerns.  But

12  when I researched it more thoroughly I began to see that the

13  question is what's the relief.  It would seem odd, your Honor,

14  if the same relief were both equitable and nonequitable.  If

15  it's the exact same dollars in the exact same amounts, in

16  effect, it's both equitable and nonequitable.  With all due

17  respect, your Honor, I just don't see it.  They're saying give

18  us back the money.  If that's what they are saying, it's

19  equitable.  They are not saying we lost this amount because you

20  did this bad thing to the corporation.  They are saying give us

21  back the money, disgorgement, equitable.

22           THE COURT:  That would turn every breach of contract

23  case into an equity case, right?

24           MR. HOFFMAN:  No.  Because normally in a breach of

25  contract case I am not just seeking my money back, I'm seeking

1    the damages that I suffered as a result of the harm you did me.

2            I may have lost profits, I may have lost something

3    else, but all can I tell you, your Honor, is if you look at the

4    Design Strategies case, which was the Second Circuit, they

5    held, if you want the money back, in effect that's

6    disgorgement.

7            That's what they want.  They want the money back, the

8    money that they paid these people.  It is disgorgement.

9    Whether they classify it as under fraud or under contract, the

10   Supreme Court has said that the important and deciding factor

11   is the nature of the relief.  So we believe it's a meritorious

12   motion, your Honor.  I wouldn't be standing up here wasting my

13   client's money if I didn't.

14           THE COURT:  What the about the RICO claim?

15           MR. HOFFMAN:  Again, the exact same relief is sought,

16   except this time they want to treble it, of course, your Honor,

17   but they say give us back the money.

18           It's not that they say what you did caused us some

19   harm that's collateral to the money that we paid you.  It is

20   give us back the money.  It may be a subset, because they may

21   be looking at less transactions, but the same claim over and

22   over.  They actually list, we paid you this on this

23   transaction, we paid you this on this transaction, we want it

24   back.

25           What does that mean?  Disgorgement.  Give us back the

1    money.

2          THE COURT:  They are seeking, among other things, a

3    judgment for money damages, aren't they, a money judgment?

4          MR. HOFFMAN:  The Second Circuit has held, and the

5    Webb case specifically states, the Southern District case of

6    Webb specifically states that the mere fact that it's money

7    damages does not control the issue of whether it's equitable or

8    not.

9          What that case had is they were seeking money damages.

10   But, your Honor, obviously every disgorgement case is a money

11   damage case.  They are saying, give me back my money.  That

12   means it's disgorgement.  That means it's equitable, and the

13   mere fact that they are saying it involves money, on that

14   logic, your Honor, every disgorgement case would be a jury

15   trial, and the Second Circuit and the Webb case hold that

16   disgorgement cases are not jury trials, because a disgorgement

17   case says give me money, and the Webb case in specific language

18   says that it is not the monetary relief in effect that controls

19   the issue.

20         THE COURT:  All right.  But that was a breach of

21   fiduciary duty claim wasn't it?

22         MR. HOFFMAN:  So is this, your Honor.

23         THE COURT:  This is also a fraud claim, isn't it?

24         MR. HOFFMAN:  It is a fraud-base --

25         THE COURT:  The fourth claim is a fraud claim.

1          MR. HOFFMAN:  But again, your Honor, the gravamen of

2     the case, whether it's breach of fiduciary duty the Supreme

3     Court has held is not the controlling test.  The controlling

4     test is the relief sought.  It is a fraud claim in effect --

5          THE COURT:  Judge Baer in the Webb case was dealing

6     with an equitable claim, breach of fiduciary duty, and he said

7     the fact that they are seeking damages for a breach of

8     fiduciary duty equitable claim does not entitle them to a jury.

9     I don't disagree with that, but this is a fraud claim.

10          MR. HOFFMAN:  It is a fraud claim, your Honor,

11     predicated in effect on a breach of fiduciary duty.

12          THE COURT:  No.  It's a fraud claim.  There is also a

13     breach of fiduciary duty claim.  Since when is a party required

14     to only plead one theory?

15          MR. HOFFMAN:  I am not suggesting they are required to

16     plead one theory.

17          THE COURT:  So they have an independent fraud claim.

18          MR. HOFFMAN:  I do not believe, your Honor, with all

19     due respect, it is an independent fraud claim.

20          Let me explain why.  Imagine that these parties had no

21     relationship whatsoever.  Then there the argument that my

22     client had an alleged duty to disclose would not apply.

23          THE COURT:  This is the second time you are asking me

24     to imagine some other case.  I don't want to do that.  I want

25     to focus on this case, where the parties know each other.  They

1    are blood relatives.

2            MR. HOFFMAN:  That's correct, your Honor.  In this

3    case the basis for the fraud, the alleged basis for the fraud

4    is as the CEO my client had an alleged obligation to disclose

5    this information.  That is the basis, as I understand it, your

6    Honor, in this case for the fraud.

7            The fraud, as I understand it, is predicated on the

8    same breach of fiduciary duty.  It's incorporated by reference.

9    The fraud is you should have told me you were getting paid this

10   amount of money.  That's what it is about.  It's about a breach

11   of duty that is largely, if not exclusively, predicated upon

12   the fact that she was the CEO.  Therefore, it goes right back

13   to what I have said, your Honor.  So it is this case, your

14   Honor.

15           THE COURT:  Mr. Itkowitz, what do you have to say?

16           MR. ITKOWITZ:  I think we have stated it in our

17   letter, and I can't agree with your Honor more.  We are

18   entitled to a jury case.

19           Your Honor, I think a motion would be frivolous, but

20   you know what, your Honor, frankly, there have been many

21   frivolous positions taken by my adversary and the defendants in

22   this matter, and when we start talking about the pretrial order

23   we are going see it.

24           THE COURT:  What is the basis for the motion addressed

25   to the RICO claim?

1          MR. HOFFMAN:  Your Honor, there are a number of bases

2     for the motion addressed to the RICO claim.  I will review just

3     some of them.

4          THE COURT:  The only thing in your letter was in a

5     footnote about the RICO claim.

6          MR. HOFFMAN:  In our reply letter, your Honor, we

7     spelled it out in greater detail, but I did not want your

8     Honor.

9          THE COURT:  I haven't seen that.

10          MR. HOFFMAN:  I had some trepidation here, your Honor.

11     Since the Court had indicated at one point there was an issue

12     as to whether we would be allowed to make such a motion, I

13     didn't want to fly in the face of that to ask the Court to

14     raise it.  Let me give you some of the reasons.

15          THE COURT:  Give me your best reason.  Let's start

16     with that one.

17          MR. HOFFMAN:  I would say, your Honor, this is, among

18     other things, the one I would start with, your Honor, is that

19     it is an alleged single-victim fraud.  The plaintiff is the one

20     who allegedly got defrauded.  It is a single-victim fraud, and

21     it's a closed ended single-victim fraud because the company is

22     no longer around.  They can't be defrauding it anymore, even if

23     these allegations are believed.  And he's basing it largely on

24     mail and wire fraud, which we have seen and the courts have

25     held are really tenuous bases on which to base a civil RICO

1    case, and they said that the court would apply higher scrutiny.

2           So when you combine the issue, that we don't think

3    there is a pattern, we think there is no continuity, we think

4    it is a single-victim fraud, when you put that together, your

5    Honor, we do believe there is a RICO motion here, and we

6    believe it's a summary judgment RICO motion not just addressed

7    to the pleadings.  We believe it is based on what we discovered

8    in discovery about their allegations.  I don't know that I

9    could have made it on day one, but certainly can make it now.

10          THE COURT:  Do you have any case law on this

11   proposition relating to a single victim?

12          MR. HOFFMAN:  I do, your Honor.  If the Court will

13   look at Gross v. Waywell, 628 F.Supp.2d 475, which says that

14   the Second Circuit has repeatedly -- I am skipping because it

15   covers a number of issues.  It says, Where there are a limited

16   number of participants, a discrete scheme with a narrow purpose

17   or single property are generally insufficient to demonstrate

18   closed-end continuity and thus satisfy an element of RICO.

19          In the Acme American v. Katzenberg, 210 WL 3835879,

20   the Court found no pattern of continuity where there was a

21   closely held family business because there were limited

22   purported participants and victims and a discrete scheme.

23          THE COURT:  Who is the judge?

24          MR. HOFFMAN:  That is an Eastern District case, your

25   Honor.  I am not aware of it.  I can tell you in a minute.  The

1  judge in Acme is Mauskopf.  The judge in the Gross case is

2  Marrero.  I could provide other authorities to the Court.

3          THE COURT:  Are these in this reply letter?

4          MR. HOFFMAN:  No, your Honor.  They are not.  If the

5  Court would like a letter on this, we would be delighted to

6  provide one.

7          THE COURT:  I am going to allow you to make a motion.

8          MR. HOFFMAN:  Thank you, your Honor.

9          THE COURT:  But I am also going to fix a date for

10  trial in this case.  I must tell you that I still remain

11  unpersuaded on the motion to strike plaintiff's jury demand,

12  but I'll let you brief it fully.  Maybe you can convince me.

13          MR. HOFFMAN:  Thank you, your Honor.  I do appreciate

14  that.

15          THE COURT:  I'm going to tell you that Judge Baer's

16  opinion is not going to convince me, because that is a totally

17  different situation in which he was dealing with an equitable

18  claim to begin with.

19          MR. HOFFMAN:  I understand the Court's position, and I

20  thank you for the guidance.

21          THE COURT:  When do you want to file these motions?

22          MR. HOFFMAN:  I would think that I would be prepared

23  to file the motions, your Honor, within three weeks.

24          THE COURT:  All right.

25          MR. ITKOWITZ:  Your Honor?

16GNGILC                    Conference

1          THE COURT:  Yes, Mr. Itkowitz.

2          MR. ITKOWITZ:  If I may be heard.

3          THE COURT:  Go ahead.

4          MR. ITKOWITZ:  With respect to scheduling --

5          THE COURT:  Yes.

6          MR. ITKOWITZ:  -- I just wanted to indicate to the

7   Court that we have numerous motions that we would like to file

8   to limit the scope of the testimony, the witnesses, the

9   exhibits.

10          THE COURT:  We are going to get to that.

11          MR. ITKOWITZ:  OK.

12          THE COURT:  Let's take things one at a time for a

13   moment.

14          MR. ITKOWITZ:  All right.

15          THE COURT:  So the defendant will file their motions

16   on July 7.  Just make it one motion.

17          MR. HOFFMAN:  Yes, your Honor.

18          THE COURT:  Combine both branches.

19          MR. HOFFMAN:  Your Honor, the only concern I would

20   have with the limitations on the pages on RICO.

21          THE COURT:  Take an extra five pages.

22          MR. HOFFMAN:  Thank you, your Honor.  I appreciate it.

23          THE COURT:  So July 7.

24          How much time do you need to respond to these motions

25   to strike your jury demand and for summary judgment on the RICO

1    claim?

2            MR. ITKOWITZ:  I would ask for three weeks, your

3    Honor.

4            THE COURT:  OK.  July 28.  I'll give the defendant

5    until August 8 to put in any reply.  I'll put it down for an

6    argument on Friday, August 19, at 10:00.

7            Now, I am going to set this matter down for trial on

8    September 12.

9            MR. HOFFMAN:  Your Honor, I just don't know how that

10   fits with the Jewish holidays.

11           THE COURT:  It's going to fit just fine, because the

12   Jewish holidays start on -- September 28 is Rosh Hashanah.

13           MR. HOFFMAN:  Thank you, your Honor.

14           THE COURT:  I'm going to fix time limits in this case.

15   I am going to give each side 20 hours to try their case.  I

16   looked at this joint pretrial order, and it's a fantasy.

17           First of all, there are multiple objections to

18   virtually every exhibit.  I assume that is just the reflex at

19   the computer.

20           If there are any significant serious motions in limine

21   about any exhibits or testimony, I am going to fix a briefing

22   schedule for that.  To be interposing relevance objections or

23   authenticity, you have to raise it in a motion.  Because if you

24   think, by the way, that you are going to introduce hundreds of

25   exhibits into evidence, then you won't have too much time for

1    any testimony in the case.

2              I think the plaintiff needs to narrow their claims and

3    so do the defendants.  You have a ridiculous number of

4    counterclaims, but having 20 hours each to try your case,

5    including openings and closing statements should focus your

6    thinking.

7              I will maintain a chess clock here, and I will enforce

8    it.  If you run out of time, you rest.  Because there are so

9    many claims on both sides, I'm going to give each side 20

10   hours.

11             By the way, the notion that anybody is going to read

12   deposition testimony to the jury is one that should be very

13   narrowly construed.  If the witness is available, you better

14   produce the witness, because that's what a trial is.  It is not

15   sitting droning on with a deposition transcript.

16             I permit wide-open cross-examination of any witness,

17   which means that they are not confined to direct so that we

18   only have to call the witness once.

19             It's only after cross-examination that I start to

20   confine the limits of inquiry, on redirect and recross, so that

21   we bring the testimony to a conclusion with a witness and move

22   on to the next witness.

23             I will talk to you more about how the trial is going

24   to unfold after we clear these motions and I see what kind of

25   in limine motions there are.

1          But, Mr. Itkowitz, don't give me 25 in limine motions.

2     Give me one coherent in limine motion on the stuff that is

3     important.

4          MR. ITKOWITZ:  Your Honor, may I ask you a question.

5     They put in -- it's hard to believe, I understand -- almost

6     2,000 exhibits which they identified.

7          THE COURT:  It's ridiculous.

8          MR. ITKOWITZ:  Given that situation, and it's even

9     more ridiculous when you actually look at the exhibits, Judge,

10    but we had to look at them.

11         THE COURT:  Let me explain another rule.  No exhibit

12    will be received in evidence unless it is offered through a

13    witness and the witness actually mentions it.  So there will be

14    no dumping of exhibits as a party is resting:  "By the way,

15    Judge, we want to offer Exhibits 1 to 1000."  Because I don't

16    send the exhibits into the jury room.  The only thing that will

17    be sent into the jury room is a list of the exhibits that were

18    received in evidence.  So if they are not mentioned, they are

19    not going to be in the jury room to be combed through.

20         It works very well in focusing thinking in trial.

21    There is no reason that this case has to take two or three

22    weeks.  It's a family dispute.

23         MR. HOFFMAN:  Your Honor, may I be heard?

24         THE COURT:  Yes.  You don't think it is a family

25    dispute?

1          MR. HOFFMAN:  No, I agree with that, your Honor.

2          THE COURT:  OK.

3          MR. HOFFMAN:  But my issue is that there are -- let me

4    explain my problem.  On the one side, the plaintiff's case is

5    in effect, because you didn't disclose certain things, you

6    forfeit all your money.

7          Our contention is that Mr. Freierman, who is the one

8    who basically did the work, did a huge amount of work.  We are

9    talking about six transactions plus another, I think, two and a

10   half years of his work.

11         Because of the nature of the different transactions,

12   he worked on six transactions plus he worked for two and a half

13   years, and all that, plus the intermediate period is brought

14   into question.  The plaintiff's case, your Honor, is not hard:

15   You didn't disclose.

16         My case, your Honor, is the justifying in effect what

17   he did.  I am concerned about whether I can provide

18   justifications for six transactions and all those years of

19   history in 20 hours, your Honor.  I'm seriously concerned.

20         THE COURT:  You have three months to think about it.

21         MR. ITKOWITZ:  Judge, on that point, if I just --

22         THE COURT:  You have three months to think about it.

23         MR. HOFFMAN:  I am aware of that.

24         THE COURT:  The most amazing thing is that if you go

25   to a movie, you remember it 20 years later, and it was only two

1    hours in length, but it made the impression, the indelible

2    impression that lasts with you 20 years later.  The same thing

3    is true about witnesses at a trial.  So having 20 hours to

4    present the case, it may sound like a little, but it's really a

5    lot.  It's more than three trial days for each side, and I

6    would really like to compress it more, because often if a case

7    takes longer than a week a jury has a problem and they get

8    tired of hearing it.

9              MR. HOFFMAN:  I appreciate that, your Honor.  The

10   other way to look at it is, if I have six transactions, plus

11   give or take two and a half years, divide that over 20 hours,

12   there really isn't much time to do what I have to do, if he's

13   being asked to justify what he did for two and a half years, at

14   least as I understand it, plus six transactions and I am

15   concerned.  I have been thinking about it, your Honor, how to

16   streamline this, I really have, and 20 hours it seems to me,

17   your Honor, is going to be an impossible thing to do.

18             THE COURT:  It's not impossible.  It's the lawyers'

19   job to make it possible.  It is not impossible at all.

20             MR. HOFFMAN:  Thank you, your Honor.

21             THE COURT:  Now, Mr. Itkowitz, what did you want to

22   say?

23             MR. ITKOWITZ:  I think your Honor's statements as to

24   how the trial is going to be conducted gives us a great aid in

25   trying to cut down the number of motions that we have to make.

1          But let me just ask you a practical question.  They

2    still at this particular time have designated almost 2000

3    exhibits, which in truth happen to be 2800 documents.  So I

4    still need that somehow brought down.  I would say at least a

5    third are completely irrelevant.  There are numerous

6    objections, I mean to all of these exhibits.

7          THE COURT:  Yes.  Like relevance?  Ridiculous

8    objections like that?

9          MR. ITKOWITZ:  Right.

10         THE COURT:  Authenticity.  Do you have that one in

11   there, too?

12         MR. ITKOWITZ:  We do.

13         THE COURT:  You have generally at least about four

14   objections for almost every exhibit, right?

15         MR. ITKOWITZ:  Your Honor, I had to be defensive.

16         THE COURT:  I looked at it for 15 seconds and I

17   realized that this is a ridiculous document.  You don't

18   understand.  The trial is not going to proceed that way.

19         MR. ITKOWITZ:  But I was presented with 2800

20   documents, and I had to respond to it.

21         THE COURT:  Maybe the defendant is going to prune it,

22   maybe not.

23         MR. ITKOWITZ:  If he doesn't, what I am saying is

24   that -- for instance, just one example.  He identified a folder

25   of disparate documents which consist of 50 or 100 pages, and

1  none of the documents have relevance to any other document

2  within the folder.  I mean, that's what we are talking about.

3          Can I just make a quick motion and kind of describe

4  and let him justify how the document is relevant?  Relevance is

5  really our key objection to most of these documents.

6          He wants to put on -- we have a fraud case involving

7  six transactions, OK, and the issue is disclosure.  It's a

8  disclosure case with respect to that particular course of

9  action.  He wants to defend by having numerous witnesses

10  testify on what a great job they did.

11          It's completely irrelevant.  They could have done a

12  great job.  It doesn't matter.

13          The nondisclosure of material subjects which should

14  have been disclosed to siblings on the board of directors is

15  what the case is about.  It doesn't matter whether they did a

16  good job or not.  It's the nondisclosure.

17          How do we get, and the jury gets subjected to a parade

18  of witnesses who are going to testify about what a great job

19  they did, which they didn't, but we don't have to get into

20  that.

21          THE COURT:  Look, I'm not going to tell you what to

22  do, but it might be sensible to pick a few bellwether exhibits

23  and make a focused in limine motion.

24          MR. ITKOWITZ:  OK.  We can do that.

25          THE COURT:  The rest of it will fall into place.  The

1    one thing I don't want is an in limine motion on 2,000

2    different exhibits.

3              MR. ITKOWITZ:  That's fine.  We've categorized it.

4              THE COURT:  I know the parties are perfectly capable

5    of doing that in this case.

6              What else?

7              MR. ITKOWITZ:  We also have some dispositive motions

8    with respect to some of the defenses and counterclaims which we

9    had discussed the schedule with counsel, and I would pose it to

10   the Court.  I'm not sure if Mr. Hoffman agrees with our

11   proposal, but we would propose that we submit all our motions

12   by July 21 and that they have three weeks to respond and then

13   one week after that.

14             MR. HOFFMAN:  Your Honor, I would suggest the same

15   schedule that we have.  The reason is otherwise I'm doing two

16   sets of motions.

17             THE COURT:  Right.

18             MR. ITKOWITZ:  All right.

19             THE COURT:  The same schedule.

20             MR. ITKOWITZ:  OK.

21             THE COURT:  What motions are you going to be making,

22   just so I know what my inbox is going to be looking like.

23             MR. ITKOWITZ:  We have Daubert motions.  They put

24   witnesses who were previously undisclosed.  They have defenses

25   that they have put in to the pretrial order which weren't pled.

1      THE COURT:  On the undisclosed witnesses, you have

2    witnesses, Mr. Hoffman, that are not previously disclosed?

3      MR. HOFFMAN:  Your Honor, the only witnesses that I am

4    aware of are the ones for authenticity.  They raised a question

5    with me and said they were going to raise authenticity

6    questions with respect to the computer, the e-mails, so we both

7    put on our lists our e-mail people.

8      As far as I recall, your Honor, there is not another

9    witness that is on that list that was undisclosed.  There may

10   be one lawyer whose law firm said he may not be the one, the

11   other one is the one, because it was the same law firm.

12      So I believe that my so-called undisclosed

13   witnesses -- the problem, your Honor, is they said none of your

14   e-mails are going to go in, so I had to list all my IT who were

15   going to say to the Court that it is going to come in.  That is

16   the nature, so far as I know, of the undisclosed witnesses.

17      If there are any others, this is the first time

18   Mr. Itkowitz has raised it with me.  If he raises it with me

19   privately, we can discuss it.

20      MR. ITKOWITZ:  I have 16 witnesses that he did not

21   disclose that he identified.

22      THE COURT:  Are they people that fall into the

23   categories that Mr. Hoffman just described, that is, IT

24   professionals or one lawyer or another at a particular firm?

25      MR. ITKOWITZ:  Some are lawyers, but some of them are

1  not.  I can give your Honor an analysis, but --

2              THE COURT:  I know you can give me an analysis.  I

3  just want to move the case forward.

4              MR. ITKOWITZ:  So do I.

5              THE COURT:  Here's a simple rule.  Unless you have

6  some other huge issue to raise on one of these witnesses, no

7  witness will be called at trial who has not been submitted for

8  deposition.

9              MR. HOFFMAN:  Your Honor, there have been very few

10 depositions in the case.

11             THE COURT:  Like I just said, if there is an

12 undisclosed witness, you can take the undisclosed witness's

13 deposition before trial.

14             MR. HOFFMAN:  Thank you, your Honor.

15             THE COURT:  That's all.  It's not reopening discovery

16 or letting people take depositions of anybody else who has

17 previously been disclosed.

18             MR. HOFFMAN:  Thank you, your Honor.

19             THE COURT:  Did I hear you say that not many

20 depositions have been taken?

21             MR. HOFFMAN:  That is correct, your Honor.

22             THE COURT:  OK.  Well, then let me just add that it's

23 another important reason why I'm imposing time limits on

24 counsel during this trial.  Because a trial is not an

25 opportunity to conduct a deposition of a witness.  That was all

1   supposed to happen over the last two years.

2            MR. HOFFMAN:  I think, your Honor, there have been

3   like, give or take, ten between both parties, give or take.

4   It's not like 30 or 40.  I didn't mean to suggest we hadn't

5   done our work.

6            THE COURT:  Any other issues?

7            MR. ITKOWITZ:  Your Honor, under your rules, jury

8   instructions should be put in at some point and a verdict

9   sheet?

10           THE COURT:  We'll deal with that after I hear argument

11  or at the time I hear argument and hopefully can dispose of the

12  motions that are going to be before me in August.

13           MR. ITKOWITZ:  OK.

14           THE COURT:  Then you will have time to submit a joint

15  request to charge.

16           Anything else?

17           MR. ITKOWITZ:  No, your Honor.

18           MR. HOFFMAN:  No, your Honor.

19           Thank you, your Honor.

20           THE COURT:  All right.  Thank you for coming in.

21           Motions in limine are all on the same schedule.

22           MR. ITKOWITZ:  Is there a page limit on that, on the

23  motions in limine.  We're not looking to write more than we

24  have to write.

25           THE COURT:  The motion in limine, there's no need for

16GNGILC                    Conference

1   it to be more than 25 pages in total for any in limine motions.

2             MR. HOFFMAN:  Your Honor, may I suggest at least a

3   delay in the schedule on the motions in limine because the

4   issue as to whether it's jury or bench trial may affect whether

5   we do them.  We would be far mor disinclined to do them if it's

6   a bench trial than if it is a jury trial.  We might not do it

7   at all.

8             THE COURT:  No, because there won't be enough time to

9   clear that issue.  So any motions in limine, make them all on

10  the same schedule so I'll get all these motions in.

11            MR. ITKOWITZ:  The motion in limine, your Honor, is

12  separate from a dispositive motion, correct?

13            THE COURT:  It certainly is in my book.

14            MR. ITKOWITZ:  OK.

15            THE COURT:  All right, gentlemen.

16            MR. ITKOWITZ:  Thank you, your Honor.

17            MR. HOFFMAN:  Thank you, your Honor.

18            THE COURT:  And ladies, thank you.

19            (Adjourned)

20

21

22

23

24

25