60709/0006959

Jay B. Itkowitz (JBI-5349)
Donald A. Harwood
Simon W. Reiff
**ITKOWITZ & HARWOOD**
305 Broadway, 7th Floor
New York, New York 10007
(646) 822-1801
jitkowitz@itkowitz.com
dharwood@itkowitz.com
sreiff@itkowitz.com

*Attorneys for Plaintiff David Gilmore*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID GILMORE, | |
|         Plaintiff/Counterclaim Defendant, | |
|     -against- | **Case No.: 09 Civ. 6230 (WHP)** |
| ABBY GILMORE *et al.*, | **ECF Case** |
|         Defendants/Counterclaim Plaintiffs, | |
|     -and- | |
| CELE HOLDINGS, INC., and CIRS, LLC, | |
|         Nominal Defendants. | |

**DECLARATION OF JAY B. ITKOWITZ IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION *IN LIMINE***

        JAY B. ITKOWITZ, an attorney admitted to the practice of law in this

Court, hereby declares upon penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

        1.      I am a founding partner of Itkowitz & Harwood, counsel for

plaintiff and counterclaim-defendant David Gilmore ("Plaintiff") herein, and I am fully

familiar with the facts and circumstances of this action.  I submit this Declaration in

support of Plaintiff's motion for partial summary judgment, seeking dismissal of defenses

and counterclaims asserted by defendants Abby Gilmore ("A. Gilmore"), Arthur

Freierman ("Freierman"), and Southbridge Financial Corp. ("Southbridge") (collectively,

"Defendants"), in the parties' jointly-submitted Pretrial Order, dated June 2, 2011 (the

"PTO").  I also submit this Declaration in support of Plaintiff's motion *in limine*.

**Transcript of Final Pretrial Conference, Joint Pretrial Order, and Pleadings**

>             2.       True and accurate copies of the following documents, referenced

throughout Plaintiff's motion for summary judgment as well as Plaintiff's motion *in

limine*, are annexed hereto as Exhibits "1" through "6":

| No. | Exhibit Description | Identifier |
|-----|---------------------|------------|
| 1 | Transcript of proceedings at the final pretrial conference before Hon. William H. Pauley III, U.S.D.J., on June 16, 2011 | N/A |
| 2 | Summary of Plaintiff's Claims and Defenses, PTO pp. 5-12 | N/A |
| 3 | Summary of Defendants' Claims and Defenses, PTO pp. 13-24 | N/A |
| 4 | Plaintiff's Second Amended Verified Complaint (without exhibits) ("SAC") | ECF Docs. 85 – 85-2 |
| 5 | Defendants' Amended Answer to Second Amended Complaint With Counterclaims ("Answer") | ECF Doc. 90 |
| 6 | Plaintiff's Reply to Counterclaims ("Reply") | ECF Doc. 92 |

**Plaintiff's Motion for Partial Summary Judgment Seeking Dismissal of Defenses
and Counterclaims Asserted by Defendants in the PTO**

>             3.       By a letter dated July 1, 2011, from the undersigned to the Court

(the "July 1, 2011 Letter"; copy annexed hereto as Exhibit "7"), Plaintiff withdrew with

prejudice his sixth cause of action, as asserted in the Second Amended Complaint (Ex.

"4" hereto) and in the Summary of Plaintiff's Claims and Defenses (Ex. "2" hereto),

seeking a declaration that the Defendants' equity purchases of the two non-party Gilmore

siblings' interests in the Gilmore Companies are void *ab initio*.  Thus, for reasons stated

in Plaintiff's accompanying memorandum of law, numerous defenses raised by

Defendants in their Summary of Claims and Defenses (Ex. "3" hereto) are now moot.

4.    Furthermore, for the reason(s) stated briefly in the table below and

in full in Plaintiff's accompanying memorandum of law, summary judgment is warranted

as to the following defenses and counterclaims, as numbered in the Summary of

Defendants' Claims and Defenses (Ex. "3" hereto):

| No.[1] | Description[2] | Brief reason(s)[3] |
|---|---|---|
| (i) | Southbridge's services in connection with 1990s transactions were valuable, and Southbridge's fees were less than those charged in the market for similar services. | Failure to disclose affirmative defense prior to filing the PTO |
| (ii) | At all times, the services Southbridge provided were valuable and the fees reasonable, and the fees were comparable to or less than fees charged on the market for similar services. | Failure to disclose affirmative defense prior to filing PTO |
| (vi) | The Gilmore Companies' senior officers, outside auditors, and accountants were fully aware of Southbridge's fees and made whatever | Failure to disclose affirmative defense prior to filing PTO; Defendants cannot |

---

[1] In their Summary of Defenses and Claims, Defendants numbered the defenses to be tried with lower-case roman numerals and the counterclaims with upper-case roman numerals.  We have followed the same convention here.

[2] To the extent Plaintiff moves to dismiss only a portion of an affirmative defense—for instance, where an affirmative defense makes numerous assertions, only some of which are the subject of this motion—we have stated in the table only the portion of the affirmative defense or counterclaim that we seek to dismiss, while reciting the balance of the allegations not the subject of this motion in the footnotes.

[3] For each of the following affirmative defenses and counterclaims, we have tried to state concisely what we believe to be the most important reason or reasons why Plaintiff is entitled to summary judgment.  The omission of a reason here, or indeed, the omission of a defense or counterclaim at all from this motion at all, should not be deemed in any way to be an admission that such a defense or counterclaim is valid.

|  | disclosures they felt should have been made.[4] | meet their prima facie burden to show elements of good-faith reliance as defense to nondisclosure |
|---|---|---|
| (vii) | At all times, defendants relied upon Covington's accountants and attorneys to make all required disclosures, and gave those accountants and attorneys access to all information; any nondisclosures are the responsibility of those accountants and attorneys. | Failure to disclose affirmative defense prior to filing PTO; Defendants cannot meet their prima facie burden to show elements of good-faith reliance as defense to nondisclosure |
| (xiii) | All decisions and recommendations made by the defendants/counterclaim plaintiffs were made in good faith and were reasonable at the time, including Abby Gilmore's decision to use Southbridge's services, and defendants/counterclaim plaintiffs' recommendations concerning the various acquisition targets; also, Covington's financial problems were due to a number of factors, including the general state of the home textile industry in the United States at the time period in question, and were not attributable to the challenged acquisitions. | Failure to disclose affirmative defense prior to filing PTO; failure to state a valid defense |
| (xiv) | Plaintiff failed to join all indispensable or necessary parties, since the relief he seeks will impact Karen and Michael Gilmore, his siblings, who were and/or are shareholders/members of the Gilmore Companies but are not parties to this lawsuit. | Failure to state a valid defense; moot |
| (xv) | This action fails to meet the requisites of a class action because, among other reasons, the class is too small, and the | Failure to state a valid defense (this lawsuit is not pleaded as a class |

---

[4] Defense "(vi)" also states that "at no time did defendants/counterclaim plaintiffs make any efforts to hide the fees being paid to Southbridge from the plaintiff or anyone else … and the information reflective of the fees paid was fully accessible and available to plaintiff and the other Board Members[.]"  Defendants' Summary of Claims and Defenses (Ex. "3" hereto), at pp. 2-3.

| | | |
|---|---|---|
| | other members of the purported class have declined to join the suit. | action) |
| (xvi) | This action fails to meet the requisites of a derivative action. | Undisputed facts establish that Plaintiff has met the requisites of a derivative action |
| (xvii) | Plaintiff is an inadequate class representative because, among other reasons, the relief he desires is not consistent with the interests and desires of the class members. | Failure to state a valid defense (this lawsuit is not pleaded as a class action) |
| (xviii) | Plaintiff is not an adequate derivative representative because, among other reasons, the relief he seeks is not consistent with the interests of the other shareholders/members. | Undisputed facts establish that Plaintiff has met the requisites of a derivative action |
| (xx) | Plaintiff does not have standing to sue for any alleged injury to non-parties Karen or Michael Gilmore. | Moot |
| (xxiii) | The equitable relief sought by Plaintiff is "barred by contract and would violate the contract among the parties[.]"[5] | Hopelessly vague and conclusory |
| (xxvi) | To the extent Plaintiff suffered any injury or damages, the "conduct of others" directly and proximately contributed and/or caused such damages, including the failure of "others" to take action with the information they knew.[6] | Hopelessly vague and conclusory |
| (xxviii) | Plaintiff cannot recover for his failure to purchase Karen Gilmore's interests in the Gilmore Companies because she "would not have sold her shares to him for tax reasons."[7] | Failure to disclose affirmative defense prior to filing PTO |

[5] *Id.* at p. 5.

[6] The balance of defense "(xxvi)" states that Plaintiff has not suffered any injury or damages, and that if he has suffered damages, his own conduct directly and proximately caused such damages, including due to his failure to take any actions to ascertain the information Plaintiff alleges was not provided to him and the failure on Plaintiff's part to take action with the information he knew.  *Id.* at p. 6.

[7] The balance of defense "(xxviii)" states that Plaintiff also cannot recover for the failure to purchase either Michael or Karen Gilmore's interests because, among other reasons, he

| (xxx) | Plaintiff failed to plead a claim and cannot state a claim, including because he failed to state a claim under RICO, and also because the Private Securities Litigation Reform Act of 1995 ("PSLRA") bars Plaintiff's RICO claim. | Failure to disclose affirmative defense prior to filing PTO; failure to state a valid defense |
|---|---|---|
| (xxxi) | Plaintiff's claims are barred, in whole or in part, by statute (including the PSLRA), to the extent he seeks purported damages arising out of alleged fraud involving securities transactions. | Failure to disclose affirmative defense prior to filing PTO; failure to state a valid defense |
| (xxxii) | "Plaintiff's claims are barred by his breach of contract[.]"[8] | Hopelessly vague and conclusory |
| (xxxv) | Some or all of the defendants/counterclaim plaintiffs' conduct is protected under the Business Judgment Rule (N.Y. Bus. Corp. L. § 700 *et seq.*), in that decisions made by Defendants were made in good faith, in the exercise of honest and reasonable judgment in the performance of duties, and in legitimate furtherance of corporate purposes. | Failure to state a valid defense[9] |
| (xxxviii) | All or some of the defendants/counterclaim plaintiffs' conduct is protected and/or the Plaintiff's claims are barred, in whole | Failure to state a valid defense, including because the employment agreement |

expressed no interest in them, made no efforts to purchase them, and signed waivers of rights of first refusal and consents to the transactions in question.

[8] *Id.* at p. 7.

[9] To the extent that Plaintiff continues to seek damages under a breach of fiduciary duty theory for Defendants' breach of the duty of *care* for mismanagement following Covington's sale in February 2006, the Business Judgment Rule is at least theoretically applicable. Hence, this motion does not seek dismissal of the defense to the extent it is asserted in response to Plaintiff's allegations of mismanagement by Defendants after February 2006, even though Plaintiff highly doubts that Defendants will be capable of establishing the elements of this defense at trial. As set forth in Plaintiff's memorandum of law, however, the Business Judgment Rule is wholly inapplicable to a claim for breach of the fiduciary duty of *loyalty*, as well as any claim alleging bad faith and/or fraud.

| | | |
|---|---|---|
| | or in part, by Abby Gilmore's employment agreement with Covington, because, among other reasons, the agreement "specifically contemplated her ability to engage services such as those challenged even without disclosure to the Board of Directors, including [P]laintiff[.]"[10] | had not been executed before two of the acquisitions in question (Spectrum and Tasco) had closed |
| (xlii) | The challenged transaction involving CIRS was reasonable and accomplished important business purposes that were in the interest of its Members, specifically including Plaintiff.[11] | Failure to disclose affirmative defense prior to filing PTO |
| (xliv) | "[A]ny transaction challenged by [P]laintiff was reasonable[.]"[12] | Failure to disclose affirmative defense prior to filing PTO; hopelessly vague and conclusory; failure to state a valid defense |
| Hanging paragraph after (xlvi) | Defendants/counterclaim plaintiffs are entitled to an offset against any amount that the Court may find they owe to Plaintiff, in any capacity, in the sum that Abby Gilmore was entitled to receive under her employment agreement for the years 1994 through 2005 but was not paid. | The undisputed facts establish accord and satisfaction barring any claim by Abby Gilmore for severance |
| Counterclaim (I) | Covington is liable to Abby Gilmore for Covington's breach of its obligations to her under the terms of her employment agreement, by failing to pay her severance compensation equal to five times the basic salary she was receiving at the time of termination, adjusted for cost-of-living, minus $100,000 | The undisputed facts establish accord and satisfaction barring any claim by Abby Gilmore for severance |
| (II) | Plaintiff is personally responsible for | The undisputed facts |

---

[10] *Id.* at p. 8.

[11] Defense "(xlii)" also claims that "[P]laintiff was not damaged in any way by the transaction[.]"  *Id.* at p. 9.  The proof at trial will show otherwise as to this latter point.

[12] *Id.* at p. 9.

|  | | amounts owed by Covington to Abby Gilmore under the employment agreement because Covington made distributions to Plaintiff in excess of $585,510 at a time when Covington was insolvent within the meaning of DCL § 271 and was in breach of its obligations to Abby Gilmore. | establish accord and satisfaction barring any claim by Abby Gilmore for severance; Defendants directed the distributions in question to be made |
| --- | --- | --- | --- |
| (III) | | Plaintiff orchestrated and implemented a fraudulent scheme to deprive Abby Gilmore of severance monies to which she was entitled under the employment agreement, thus entitling Abby Gilmore to monetary damages of $1,038,356 plus interest, as well as punitive damages. | Failure to set forth allegations with particularity under Rule 9(b); fraud claim is based upon "forward-looking statements" of future intentions |
| (VI) | | Plaintiff is liable to Arthur Freierman for all losses, damages, costs or expenses—including attorney's fees for defending this action—incurred as a result of Plaintiff's breach of the terms of the release he signed in connection with Karen Gilmore's sale of her interests in Covington to Arthur, and as a result of Plaintiff's breach of his contract to indemnify and hold Freierman harmless from and against such losses. | Lack of consideration for the alleged contract to indemnify |

5.     The undersigned counsel previously appeared before the Court on December 17, 2009 (*see* ECF Doc. 23), to discuss, as is relevant here, Plaintiff's letter application seeking leave to dismiss various affirmative defenses and counterclaims.  The proceedings did not take place on the record, but the undersigned recalls that the Court asked whether discovery would be materially narrowed if the affirmative defenses and counterclaims in question were dismissed.  When the undersigned responded "no", the Court suggested that Plaintiff postpone his dismissal motion until after the close of discovery.

6.      Now that discovery is closed and the case is set down for trial, however, the undersigned submits that a summary judgment motion pursuant to Rule 56 is warranted.

7.      As indicated in the above chart, many of the defenses—specifically, defenses (i), (ii), (vi), (vii), (xiii), (xxviii), (xxx), (xxxi), (xlii), and (xliv)—were raised for the first time in the PTO.  Consequently, Plaintiff had no opportunity to conduct documentary discovery or ask deposition questions that might have explored the factual contours of such defenses, and therefore, Plaintiff would be unduly prejudiced were such defenses permitted to proceed to trial.  Given that Defendants had ample opportunity to amend the pleadings or at least to give Plaintiff fair warning that they intended to raise such issues in this litigation (including, for instance, statutory defenses based upon the Private Securities Litigation Reform Act of 1995 and common-law doctrines such as good-faith reliance upon the advice of accountants and attorneys), the fact that Defendants inexcusably failed to raise these defenses prior to submission of the PTO provides a further basis for finding that Plaintiff would be unfairly prejudiced were such defenses permitted to be submitted to the jury.

8.      Likewise, three of the counterclaims (along with the "hanging paragraph" at the end of the litany of defenses) must be dismissed as a matter of law too, because they are predicated upon Abby Gilmore's supposed right to recover severance payments under her employment agreement, dated as of January 1, 1995 (the "Employment Agreement"; copy annexed to the accompanying Declaration of David Gilmore, sworn to on July 7, 2011 ("D. Gilmore Decl."), as Exhibit "2").  However, as set forth in the accompanying motion papers, the *undisputed* facts—in particular, as set

forth in Defendants' own Answer—are that the parties had a dispute over whether Abby Gilmore was entitled to her full severance under the Employment Agreement (*see* Answer, Ex. "5" hereto, at ¶ 243), and that that dispute was resolved when Abby Gilmore accepted one year's severance at the time of the sale of the company (*id.* at ¶¶ 247-48).[13] For the reasons fully stated in the accompanying memorandum of law, such facts plainly establish an accord and satisfaction that discharged Cele from any further obligations under the Employment Agreement to Abby Gilmore.

9.   In addition, it is further undisputed that Abby Gilmore waited more than 18 months to renew her demand for five years of severance (*id.* at ¶ 249), and that on December 4, 2007, she and Arthur then waived in writing any intention to pursue the frivolous severance claim against Plaintiff and his brother Michael (*id.* at ¶ 252).  These facts amply support an independent basis for concluding that Plaintiff is entitled to judgment as a matter of law on Counterclaims (I), (II), and (III) (and the hanging paragraph at the end of the defenses), which all are based upon Abby Gilmore's supposed right to additional severance under the Employment Agreement.[14]

---

[13] In fact, Plaintiff alleges that the agreement was to pay Abby Gilmore one year's salary as severance, but only in the event that all debentures due and owing from Covington to the Gilmores were repaid in full, and in the event that all debentures were *not* repaid, then Abby Gilmore would only be entitled to six months' salary as severance (SAC (Ex. "4" hereto) ¶ 115).

[14] Nor are Defendants' nonsensical accusations of fraud in Counterclaim (III) worthy of a trial either.  The Answer does not allege any false statements made *prior to* Abby Gilmore's acceptance of one year's salary as severance, so at the outset, it must be dismissed for failure to state a claim for fraud and for failure to comply with Rule 9(b), as explained in the accompanying memorandum.  Moreover, the most damning allegedly false statement forming the predicate for Defendants' counterclaim for fraud and request for punitive damages is that on November 19, 2007, David Gilmore sent an email to Defendants stating that "[w]e [Plaintiff and Michael Gilmore] want very much to reach an agreement and to end the rancor that is splitting the Gilmore family.  Although we feel

10.     The balance of Plaintiff's motion is directed to dismissal of the other frivolous defenses and counterclaims asserted in the PTO that would confuse the jury, increase the risk of undue prejudice, and require unnecessary briefing and drafting of jury charges on claims and defenses that should not go any further in this lawsuit.

### Motion *In Limine* to Exclude and/or Limit Expert Testimony

11.     True and accurate copies of the following documents, referenced in the portion of Plaintiff's *in limine* motion seeking to exclude and/or limit expert testimony, are annexed hereto as Exhibits "8" through "10":

| No. | Exhibit Description | Identifier |
|-----|---------------------|------------|
| 8 | Report of Fred Jager, dated April 1, 2011 | DTX-R65[15] |
| 9 | Report of David N. Deutsch, dated April 6, 2011 | DTX-S65 |
| 10 | Report of Roger Gilmartin, dated April 4, 2011 | DTX-T65 |

12.     For the reasons set forth in full in the accompanying Memorandum of Law, Plaintiff is entitled to several limitations on expert testimony from Messrs. Fred Jager and David N. Deutsch, in light of the statements and disclosures they made in their expert reports with respect to their qualifications, as well as the methods used and the facts upon which they relied in forming the opinions articulated in such reports (among other reasons).  Furthermore, Plaintiff is entitled to the wholesale exclusion of *any* expert

---

it is not possible for everyone to be together this year for Thanksgiving, ***we are hopeful that we will all move beyond our disappointments and have Thanksgivings as a family again***."  Answer (Ex. "5" hereto), at ¶ 250 (emphasis in original).  Setting aside the question of whether amorphous statements of hopes about private family relations can ever give rise to a common-law fraud claim, the Court no doubt recognizes that such statements of future intentions, as opposed to statements of present fact, certainly are not actionable in fraud as a matter of law, as set forth in more detail in Plaintiff's accompanying memorandum.

[15] References herein to Defendants' proposed trial exhibits, as tabulated in the PTO, are identified with the prefix "DTX-__".

testimony from Roger Gilmartin, a former Covington senior officer who plainly is not

entitled to give expert opinions on the topics identified in his report, and who in any

event should be testifying, if at all, as an ordinary fact witness.

### Motion *In Limine* to Exclude Documents Produced After Close of Discovery

13.    True and accurate copies of the following documents, referenced in

the portion of Plaintiff's *in limine* motion seeking to exclude documents produced after

the close of discovery, are annexed hereto as Exhibits "11" through "24":

| No. | Exhibit Description | Identifier |
|---|---|---|
| 11 | Order, dated February 14, 2011 | ECF Doc. 96 |
| 12 | Endorsed Letter from Jessica Jimenez, Esq. to the Court, entered April 1, 2011 | ECF Doc. 101 |
| 13 | Plaintiff's First Set of Requests for Production, dated November 12, 2009 | N/A |
| 14 | Plaintiff's First Supplemental Requests for Production, dated June 23, 2010 | N/A |
| 15 | Email, April 15, 2011, from Jessica Jimenez, Esq., to Jay B. Itkowitz and others, with 30-page attachment entitled "G. Curtis Documents (00195255).pdf" (filed in redacted form)[16] | N/A |
| 16 | Memo, December 16, 1994, from Arthur Freierman to Abby Gilmore, George Curtis, and others | DTX-J73 |
| 17 | Memo, February 14, 1995, from Arthur Freierman to Abby Gilmore, George Curtis, and Hy Shwiel | DTX-L73 |
| 18 | Memo, February 28, 1995, from Arthur Freierman to George Curtis | DTX-M73 |
| 19 | Memo, March 13, 1995, from Arthur Freierman to Abby Gilmore, George Curtis, and others | DTX-N73 |
| 20 | Letter, April 15, 1998, from Dr. Badikian to Abby Gilmore (filed in redacted form) | DTX-Q73 |
| 21 | Notice and Proof of Disability Claim for George Curtis, dated April 21, 1998 (filed in redacted form) | DTX-S73 |
| 22 | Memo, June 16, 1998, from Abby Gilmore to Covington staff | DTX-V73 |
| 23 | Severance Agreement, June 19, 1998, between | DTX-W73 |

---

[16] Exhibits "15", "20", and "21" hereto contain sensitive health information of a non-party, George Curtis.  Pursuant to the Federal Rules of Civil Procedure and Local Civil Rules for the Southern District of New York, we have redacted that information in lieu of seeking leave to file such exhibits under seal.

| | Covington Industries Inc. and George Curtis | |
|---|---|---|
| 24 | Attendance sheet for George Curtis | DTX-X73 |

14.     Plaintiff's First Set of Requests for Production, dated November 12, 2009 (annexed hereto as Exhibit "13"), requested that Defendants produce the following documents:

> a.  "All communications and documents regarding Defendant Southbridge's retention, by any of the Gilmore Companies, as an employee and/or consultant."  (Request 12).
>
> b.  "All communications and documents regarding the salary, compensation, and benefits of Defendant Southbridge by one or more of the Gilmore Companies as an employee and/or consultant."  (Request 14).
>
> c.   "All communications and documents regarding Defendant Freierman's salary, compensation, and benefits, by any of the Gilmore Companies, as an employee and/or consultant." (Request 17).
>
> d.   "All communications and documents regarding services allegedly performed by Defendants Southbridge and Freierman for the Gilmore Companies."  (Request 18).

15.     Plaintiff's First Supplemental Requests for Production, dated June 23, 2010 (annexed hereto as Exhibit "14"), requested that Defendants produce the following:

a.   "All communications and documents regarding Old

Covington's acquisition of assets of Rapier/Cambridge Mills,

Inc."  (Request 8).

16.   To my knowledge, and based upon my office's performing a

thorough search under my supervision of documents previously produced by Defendants

in this litigation, Exhibits "16" through "23" above (i.e., Defendants' proposed trial

exhibits J73, L73, M73, N73, Q73, S73, V73, and W73) were never produced by

Defendants prior to April 15, 2011, when those documents were produced by counsel

(Ex. "15" hereto).

17.   Furthermore, Exhibit "24" (Defendants' proposed trial exhibit

X73) was never produced as a part of any of Defendants' initial or supplemental

document productions, including the 30-page production made on April 15, 2011 (Ex.

"15" hereto) following close of discovery.

18.   The 30 pages of documents produced on April 15, 2011, are

clearly responsive to Plaintiff's First Set of Requests for Production of Documents and

Plaintiff's First Supplemental Set of Requests for Production of Documents.

19.   Had these documents been made available, our firm might have

been able to question Defendants or non-party witnesses at depositions about them, or we

might have used other discovery devices to obtain additional follow-up information, but

the documents were produced at a time when the deadline to conduct discovery had long

ago expired.  Thus, Plaintiff has been prejudiced because, in addition to being deprived of

the opportunity to conduct follow-up or additional discovery in connection with such

documents, Plaintiff also has no way of knowing how Defendants or non-party witnesses

will answer questions at trial regarding such documents, which, as noted above, were produced well after the cutoff date for the close of discovery as ordered by the Court (*see* Order, dated February 14, 2011 (Ex. "11" hereto), as modified by an Endorsed Letter from Jessica Jimenez, Esq., to the Hon. William H. Pauley III, U.S.D.J., entered April 1, 2011 (Ex. "12" hereto), setting a discovery cutoff of February 25, 2011).

20.    Accordingly, Plaintiff seeks an Order *in limine*, pursuant to Rule 37 and the inherent power of the Court, to preclude the use of the so-called "Curtis Docs" as exhibits at trial and to preclude any testimony relating to such exhibits.

**Motion *In Limine* to Strike "Bellwether" Exhibits**

21.    True and accurate copies of the following documents, referenced in the portion of Plaintiff's motion *in limine* seeking to strike certain "bellwether"[17] documents listed by Defendants as proposed trial exhibits, are annexed hereto as Exhibits "25" through "37":

| No. | Exhibit Description | Identifier |
|---|---|---|
| 25 | Folder labeled "Board Meeting, April 11, 2003" | DTX-X18 |
| 26 | Email, January 16, 2006, from MaryAnn Frenz to Abby Gilmore and Arthur Freierman, with 6-page attachment of a spreadsheet entitled "Vacation Balance as of 1-16-06 – 05 Vac Bal.xls" | DTX-K29 |
| 27 | Covington Industries Inc. Bookings Trends, Weeks of December 3, 2001 through January 28, 2002 | DTX-I11 |
| 28 | Draft letter [undated], from Southbridge Financial | DTX-Z3-2[18] |

---

[17] In response to the undersigned's request at the final pretrial conference for leave to make a motion *in limine* to exclude many of Defendants' proposed trial exhibits, the Court stated, "Look, I'm not going to tell you what to do, but it might be sensible to pick a few bellwether exhibits and make a focused *in limine* motion."  June 16, 2011 Tr. (Ex. "1" hereto), at 20:21-23.

[18] Defendants' tabulation of proposed trial exhibits is numbered A1, B1, C1, ..., Z1, A2, ..., Z2, A3, ..., etc.  However, two sets of exhibits identified as "A3" through "Z3" were tabulated; accordingly, the parties have referred to the first set in the chart as A3-1 through Z3-1, and the second chart as A3-2 through Z3-2.

| | | Corp., to Stillwater, Inc. | |
|---|---|---|---|
| | 29 | Email, February 23, 2006, from Michael Gilmore to Abby Gilmore, re: bonus checks to Covington employees following asset sale | DTX-G41 |
| | 30 | Board minutes, April 24, 1987 | DTX-A1 |
| | 31 | Board minutes, June 14, 2002 | DTX-U13 |
| | 32 | Internet printout of the first few sentences of a trade magazine article on the fabric industry dated December 20, 2004 (article printed December 25, 2010) | DTX-K74 |
| | 33 | Photocopy of three checks, all dated March 19, 1999 and made out to unrelated non-parties | DTX-U68 |
| | 34 | Photocopy of check, dated May 26, 2000, to Southbridge Financial Corp. for $6,495.00 | DTX-S9 |
| | 35 | Photocopy of three checks, dated May 29, 1998, June 12, 1998, and June 19, 1998, one made to Southbridge Financial Corp. for $16,976.69, and the other two made to unrelated non-parties | DTX-S67 |
| | 36 | Email dated November 26, 2007, from Ira Bryck to Abby Gilmore, Arthur Freierman, David Gilmore, and Michael Gilmore, attaching 2-page invoice along with 4-page notes from mediation discussion, marked "Private and Confidential" (filed in redacted form) | DTX-P62 |
| | 37 | Statement of Net Worth Pursuant to N.Y. Domestic Relations Law 236, dated October 21, 2004 | DTX-Z20 |

22.     Exhibit "25" hereto (DTX-X18) is typical of many of Defendants'
egregiously improper designations.  It appears to be a folder entitled "Board Meeting,
April 11, 2003", Bates-stamped DP 10220 - DP 10247, containing what in turn appears to
be the following documents:

      a.  A one-page document entitled "Agenda" for a Meeting of the Board of Directors on April 11, 2003;

      b.  A two-page email chain dated April 10, 2003 (DP 10222 – DP 10223), by which Roger Gilmartin forwards an email apparently received from Bob Ellsweig and MaryAnn Frenz the same day, regarding the marketing and economic conditions to be discussed at the upcoming board meeting;

      c.  A three-page document (DP 10224 – DP 10226) appearing to be Board minutes from the April 11, 2003 meeting;

d.  A one-page document (DP 10227) comparing imports from the Far East, West Asia, Mediterranean, Europe, and South America, from 2001 through 2003;

e.  A one-page document (DP 10228) identifying the "Major Customers – 2002 (over $500000 per year sales)";

f.  A three-page unsigned document entitled Board Meeting Notes, April 11, 2003 (DP 10229 – DP 10231);

g.  A one-page document entitled "Report of General Counsel" for the Board of Directors Meeting on April 11, 2003 (DP 10232), with handwritten notes made by an unidentified individual, regarding matters such as pending age and race discrimination lawsuits;

h.  A one-page letter dated April 7, 2003 purporting to be from Mary Doyle, Executive Director of Homes for Families, to Russell Nuce, as General Counsel for The Covington-Gilmore Foundation (DP 10233), expressing appreciation for the foundation's $25,000 donation;

i.  A one-page undated and unsigned document entitled "Agenda for BOD Meeting" (DP 10234);

j.  A one-page chart entitled "9 Month Booking/Revenue Trend" (DP 10235) for July 2002 through March 2003;

k.  A one-page chart entitled "39 Week Revenue/Booking Trend" (DP 10326) for July 8, 2002, through March 31, 2003;

l.  A one-page unsigned letter dated January 15, 2003, from Covington Industries Inc., by David Gilmore as Customer Ombudsman, to Rag Shop/Mobile Fabrics, stating that a price adjustment had been made that credited the customer's account $60 (DP 10237);

m.  A one-page unsigned and undated letter from Covington Industries Inc., by David Gilmore as Customer Ombudsman, to a "Valued Customer", advising that Plaintiff had assumed a role at Covington as ombudsman (DP 10238);

n.  A one-page letter, dated December 10, 2002, apparently signed by Russell Nuce on behalf of The Covington-Gilmore Foundation, and apparently sent to Mr. Ken Roth, Executive

Director of Human Rights Watch, Inc., stating that Mr. Nuce was enclosing a check for $25,000 (DP 10239);

o.   A one-page letter dated April 7, 2003 (DP 10240), appearing to be a duplicate copy of the Homes for Families letter described above and Bates-stamped DP 10233;

p.   A four-page document appearing to be a newsletter entitled "Miracle News", Fall 2002 (DP 10241 – DP 10244), that appears to have no mention of anything remotely related to the case except that on the second page, The Covington-Gilmore Foundation is identified as a Corporate & Foundation Support;

q.   A one-page document appearing to be a black-and-white photocopy of a Covington full-page advertisement or graphic (DP 10245); and

r.   A two-page letter dated March 7, 2003, from Russell Nuce as General Counsel of Covington Industries Inc., to the Board of Directors, asking the Board for permission to cease sending the monthly letter required under her Employment Agreement (DP 10246 – DP 10247), but not countersigned by any of the Board members, including Michael Gilmore, whose name is listed below the signature line.

23.   Many of the documents in Defendants' laundry list of proposed trial exhibits are much *longer* than DTX-X18 and similarly include folders of dozens of disparate emails, letters, invoices, checks, and other items that Defendants apparently intend to introduce wholesale at trial for whatever purposes one might ascertain from the numerous items contained therein.  We object in full to these absurd designations, which we believe were filed abusively and in bad faith, for the sole purpose of forcing our firm to prepare objections to them rather than from a bona fide belief that such folders ever could be moved into evidence as identified.

24.   Defendants' proposed trial exhibit X18 (Ex. "25" hereto) is completely irrelevant under Federal Rule of Evidence ("FRE") 402, insofar as nothing in the entire folder increases or decreases the likelihood of a material fact bearing upon any

of the claims or defenses that are to be tried in this lawsuit.  Moreover, on its face, DTX-X18 does not have any indicia of being a record that was kept in the ordinary course of Covington's business practices, thus implying that the exhibit cannot be authenticated and is nothing but rank hearsay under Rule 802.  Even if Defendants testify that this document was kept by them in the ordinary course of business, however, their production has not indicated similar folders kept in the ordinary course of business—for instance, for each Board meeting—and therefore Defendants will be unable to overcome any hearsay objection as to the entire folder.  Assuming they were able to overcome such objections, they would then need to prove that the letters, unsigned and signed, along with the other notes, documents, charts, board minutes, and newsletters, fall within some hearsay exception, none of which we believe appropriately may be applied here.  (Furthermore, the Board minutes appear to contain opinion statements that may violate Rule 701 if deemed testimonial.)  And even if each document tabulated above as being a part of DTX-X18 were individually authenticated and deemed relevant and non-hearsay, the fact that Defendants are trying to introduce these documents *together* as if they always existed as one raises substantial prejudice and confusion concerns under Rule 403.  Accordingly, we do not believe Defendants, both attorneys, had a good-faith basis for designating DTX-X18 as a proposed trial exhibit that they genuinely thought could be admitted at trial into evidence.  We think the more likely explanation is that they designated dozens of exhibits like DTX-X18 in order to ratchet up the costs for Plaintiff in this litigation and to impose as much burden as possible on our firm in this matter.

25.     The other bellwether exhibits are equally egregious, though for different reasons.  Exhibit "26" hereto (DTX-K29) is one of literally hundreds of similar

proposed exhibits that appear to evidence nothing more than that Arthur Freierman was

copied on correspondence attaching drafts of the contracts and accompanying schedules

that would ultimately form the Asset Purchase Agreement, dated as of January 30, 2006,

by which Covington Industries Inc. sold substantially all its assets to Covington

Holdings, LLC, a similarly-named entity that was not owned by any of the Gilmore

family (SAC ¶¶ 8, 84).  Even if DTX-K29 showed that Arthur Freierman played a central

role in drafting and preparing the Asset Purchase Agreement, it would be totally

irrelevant to the claims to be tried (*see* Plaintiff's Summary of Claims and Defenses, Ex.

"2" hereto).

          26.     Likewise, Exhibit "27" hereto (DTX-I11) is one of over a hundred

such "Booking Trends Reports" being identified as a proposed exhibit.  So far as we can

tell, the only purpose in identifying such documents as proposed exhibits is to enable

Defendants to show that Arthur Freierman "did work" during the time in question.  We

fail to see how a Booking Trends Report from any time period, but especially from 1999-

2005, could have any bearing whatsoever on the allegations in this case.

          27.     Exhibit "28" hereto (DTX-Z3-2) is an unsigned, undated letter

from Arthur Freierman to Stillwater, Inc., identified apparently for the purpose of

showing that Southbridge solicited companies other than Chelsea, Spectrum, Tasco,

Fame, Kaufmann, and Rapier as possible acquisition targets during the 1990s but that

Covington did not actually acquire such companies (including Stillwater).  Assuming that

this letter were signed and dated, we believe Defendants still would have an uphill battle

to explain the relevance of this contention to the claims and defenses to be tried in this

lawsuit; however, in light of the fact that we are unaware of Defendants having produced

any signed and dated equivalent version of DTX-Z3-2 (or any similar exhibit), we submit that such unsigned letters are just as likely to have never left Freierman's desktop computer, where they were created.  Accordingly, we do not believe the jury should be burdened with such unsigned, undated letters, which plainly violate the Best Evidence Rule, cannot be authenticated, and furthermore, as unsigned and undated letters, are totally irrelevant.

28.     Exhibit "29" hereto (DTX-G41) is an email forward of a correspondence between Abby Gilmore and a former Covington employee.  In the correspondence, the employee showers Abby with praise and gratitude for giving out bonuses to Covington employees.  The employee notes that two of the warehouse staff fell to the floor in surprise and all of the customer service employees cried.  This is just one example of over a dozen of Defendants' trial exhibits whose only purpose is to paint Defendants in a good light.  Whether Covington paid a bonus to its employees and how those employees reacted is irrelevant to the issues at hand.  Clearly, these exhibits are meant to invoke an emotive response.

29.     Exhibit "30" hereto (DTX-A1) and Exhibit "31" hereto (DTX-U13) contain random Covington Board Minutes.  They deal with a random assortment of of general matters from bathroom renovations to the best selling floral patterns.  In all, Defendant's have included at least 10 exhibits which contain board minutes that do not reference any of the acquisitions or secret finder's fees that form the basis of the action.  These documents are irrelevant and should be excluded.

30.     Exhibit "32" hereto (DTX-K74) contains the internet printout of the first few sentences of an internet magazine entitled *Home Textiles Today*.  The article

was printed on December 12, 2010 and contains a reference to how the Chinese fabric market has affected the fabric market in the United States.  The exhibit contains only the first of the three pages of the article.  This exhibit is typical of a group of at least 10 exhibits that detail the decline of the fabric industry during the 2000s.  These exhibits should be excluded because the performance of the fabric industry is irrelevant Plaintiff's claims.

31.     Exhibit "33" hereto (DTX-U68) is a single page on which three single checks have been photocopied.   The checks date to March 1999 and were issued by Covington Fabrics, signed by David, and made out to Shared Technologies Fairchild, Southeastern Warehousing and Distribution, Inc., and Spartan Mills, all of which are third parties unrelated to each other or this litigation.  This page of three checks is nearly identical to the 157 other exhibits in this category.  These exhibits are clearly irrelevant, as having no bearing on any of the claims or defenses at issue in this case.  Like so many of Defendant's other trial exhibits, the checks in this category would be extremely confusing, cumulative, and a waste of time, violating Rule 403, and were clearly designated for no purpose other than burdening Plaintiff and wasting his resources.

32.     Exhibit "34" hereto (DTX-S9) is a single check dating to May 2000, issued by Covington Industries, signed by David, and made out to Southbridge. This is typical of the other 46 exhibits in the category.  They are all checks to Southbridge, but significantly, none of checks Defendants designated as trial exhibits were payment for the finder's fees at issue in this case, and are therefore irrelevant to any issues to be tried.  They are also cumulative, prejudicial, and confusing.

33.     Exhibit "35" hereto (DTX-S67) is another single page with three checks.  Two of the checks are made out to unrelated third parties – in this particular example, Santee Print Works and Hewlett Packard – and the third check is made out to Southbridge.  They are as irrelevant as the two categories of checks mentioned above, and similarly, do not contain any of the checks made out to Southbridge for the finder's fees.  This category has even greater potential for confusion and obfuscation, since the pages contain checks made out to both a party in this case and irrelevant third parties.

34.     Exhibit "36" hereto (DTX-P62) contains an email dated November 26, 2007, from Ira Bryck to Abby Gilmore, Arthur Freierman, David Gilmore, and Michael Gilmore.  Attached to the email are 4 pages of notes marked "Private and Confidential."  These notes detail a mediation discussion and are clearly excludable under Rule 408.

35.     Exhibit "37" hereto (DTX-Z20) contains a statement of David Gilmore's net worth pursuant to a divorce proceeding.  Any relevance these documents might have is greatly outweighed by the prejudicial effect they would have on a jury.

## **Conclusion**

36.     For the reasons stated, Plaintiff's motions for partial summary

judgment and *in limine* should be granted in full.

Dated:          New York, New York
                July 7, 2011

                                        **ITKOWITZ & HARWOOD**


                                    By: */s/ Jay B. Itkowitz*
                                        Jay B. Itkowitz (JBI-5349)
                                        Donald A. Harwood (DH-0834)
                                        Simon W. Reiff (SR-2356)
                                        305 Broadway, 7th Floor
                                        New York, New York 10007
                                        (646) 822-1801
                                        jitkowitz@itkowitz.com
                                        dharwood@itkowitz.com
                                        sreiff@itkowitz.com

                                        *Attorneys for Plaintiff David
                                        Gilmore*