60709/00065453

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID GILMORE,

                Plaintiff/Counterclaim
                Defendant,

      -against-

ABBY GILMORE *et al.*,

                Defendants/Counterclaim
                Plaintiffs,

      -and-

CELE HOLDINGS, INC., and CIRS, LLC,

                Nominal Defendants.

**Case No.: 09 Civ. 6230 (WHP)**

**ECF Case**

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION PURSUANT TO <u>RULES 59(E) AND/OR 60(B) AND LOCAL CIVIL RULE 6.3</u>

Jay B. Itkowitz (JBI-5349)
Donald A. Harwood
Simon W. Reiff
**ITKOWITZ & HARWOOD**
305 Broadway, 7th Floor
New York, New York 10007
(646) 822-1801
jitkowitz@itkowitz.com
dharwood@itkowitz.com
sreiff@itkowitz.com

*Attorneys for Plaintiff David Gilmore*

Dated:      New York, New York
            September 19, 2011

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iv

I.     **Preliminary Statement** ................................................1

II.    **Legal Standard on Motion for Reconsideration** ...........................2

III.   **Argument** ...............................................................3

      A.    The Court Erred By Concluding That If Two Of Four Fraudulent Schemes Alleged Conduct That Would Be Actionable As Securities Fraud And Thus Cannot Be Relied Upon To Establish A RICO Violation, The RICO Claim Is Barred By The PSLRA—Even If The Other Schemes Are Independent, Concededly Do Not Involve Securities Transactions, And State A Valid Pattern Of Racketeering Activities. ...........................................................3

            1.    *The Plain Language of RICO, As Amended By The PSLRA, Compels The Conclusion That Only Predicate Acts Based Upon Conduct That Could Be Actionable As Securities Fraud Are Barred By The PSLRA, Not That A Claim Based Upon Both Securities And Non-Securities Conduct Is Necessarily And Completely Barred As A Matter Of Law.* ...........................................3

            2.    *The Proper Inquiry, According To The Second Circuit And Every Other Circuit To Consider The Issue, Is Whether The Allegations That Form The Basis For A Particular Predicate Act Occur In Connection With Securities Fraud,* Not *Whether* Any *Of The Predicate Acts Occur In Connection With Securities Fraud.* ...................................................5

            3.    *The Court Should Have Separated The Securities Fraud From The Non-Securities Conduct.  The Cases Holding That "Surgical Presentation" Offends The PSLRA Uniformly Involve Allegations* Entirely *Actionable As Securities Fraud, Unlike Here, Where This Court Held That Plaintiff's Claims Include Allegations Of Conduct Having No Connection To Securities Transactions.* ...................................................7

            4.    *Every Court To Consider The Matter Has Ruled That Disaggregation Of Non-Securities Conduct Is Appropriate When Multiple Schemes Form The Basis Of The Plaintiffs' RICO Claims.* .........................................................9

5.   *At A Minimum, And In The Alternative, Plaintiff Seeks Leave To Replead His RICO Claims To Remove Any Reliance Upon Components That Arguably Involve Securities Transactions.* ..................11

B.   Even Assuming That Plaintiff's RICO Claim Was Properly Dismissed, The Court Nonetheless Abused Its Discretion When, *Sua Sponte* And Without Providing Plaintiff With An Opportunity To Be Heard, It Declined To Exercise Supplemental Jurisdiction Over The Remaining State Law Claims, Especially Since Trial Was Less Than Two Weeks Away, And Neither Novel Nor Complex State-Law Issues Were Present. .................................................................................................12

1.   *The Court Erred By Not Providing Notice To Plaintiff Of Its Intention To Decline Supplemental Jurisdiction Over Plaintiff's State Law Claims And An Opportunity To Respond.* ...............................13

2.   *The Court Further Erred By Overlooking Second Circuit Decisions Uniformly Holding That The* Gibbs-Cohill *Factors Weigh In Favor Of Exercising Supplemental Jurisdiction Under Facts Indistinguishable From This Case.* .....................................15

3.   *The* Gibbs-Cohill *Factors Favor Retention Of Supplemental Jurisdiction Here Because Trial Was Just 12 Days Away, No Novel Or Complex Issues Of State Law Are Present, And Complex Issues Of ERISA Law And Preemption Await The Trier Of Law, Whether Here Or In State Court.* ........................18

a.   *The Factors Of Convenience, Economy, And Fairness Are Offended By Forcing The Parties To Restart This Litigation In State Court.*        18

b.   *The Comity Factor Weighs In Favor Of Retaining, Not Declining, Supplemental Jurisdiction, Because One Of Plaintiff's Claims Raises A Substantial Question Of Federal Law, And Because A Federal Receiver Was Appointed In This Case.*        23

IV.   **Conclusion** ...........................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.*, 555 F.Supp.2d 335 (E.D.N.Y. 2008) ........................................................................................................2

*Andrea Doreen Ltd. v. Bldg. Material Local Union 282*, 299 F.Supp.2d 129 (E.D.N.Y. 2004) .................................................................................................7, 10

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ............................................4, 5

*Atl. Trust Co. v. Chapman*, 208 U.S. 360 (1908) ..........................................................24

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321 (3d Cir. 1999) ......................6, 8

*Banco de Seguros Del Estado v. Mut. Marine Offices, Inc.*, 230 F.Supp.2d 427 (S.D.N.Y. 2002) ....................................................................................................2

*Bixler v. Foster*, 596 F.3d 751 (10th Cir. 2010) .............................................................6

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) ....................................3

*Boyle v. United States*, 129 S.Ct. 2237 (2009) ..............................................................4

*Bray v. City of New York*, 346 F.Supp.2d 480 (S.D.N.Y. 2004) ..................................17

*Brookshire Bros. Holding, Inc. v. Dayco Prod, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ...........................................................................................................18

*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997) .................................15

*Dabit v. Merrill Lynch*, 395 F.3d 25 (2d Cir. 1995), *rev'd on other grounds,* 547 U.S. 71 (2006) .............................................................................................8

*Day v. McDonough*, 547 U.S. 198 (2006) ....................................................................13

*Doe by Fein v. Dist. of Columbia*, 93 F.3d 861 (D.C. Cir. 1996) .................................13

*Eatoni Ergonomics, Inc. v. Research in Motion Corp.*, No. 08 Civ. 10079 (WHP), 2011 WL 3792814 (S.D.N.Y. Aug. 25, 2011) ..............................................2

*Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536 (2d Cir. 1989) .........................15

*Foman v. Davis*, 371 U.S. 178 (1962) ..........................................................................11

*Gaskill v. Gordon*, 27 F.3d 248 (7th Cir. 1994)............................................................24

*Gatz v. Ponsoldt*, 297 F.Supp.2d 719 (D. Del. 2003) ...............................................7, 9

*Gilmore v. Gilmore*, No. 09 Civ. 6230 (WHP), 2010 WL 4190211 (S.D.N.Y. Nov. 15, 2010) .....................................................................................................................18, 19

*Gilmore v. Gilmore*, No. 09 Civ. 6230 (WHP), 2011 WL 3874880 (S.D.N.Y. Sept. 1, 2011) ..................................................................................................... passim

*Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000), *cert. denied*, 531 U.S. 828 (2000)...................................................................................................6, 7, 10

*Hudson Riverkeeper Fund, Inc. v. Harbor at Hastings Assocs.*, 917 F.Supp. 251 (S.D.N.Y. 1996) ......................................................................................................21

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 510 F.Supp.2d 299 (S.D.N.Y. 2007) ......................................................................................................16

*Lewis v. New York*, 547 F.2d 4 (2d Cir. 1976)...............................................................15

*Ling v. Deutsche Bank, AG*, No. 04 Civ. 4566 (HB), 2005 WL 1244689 (S.D.N.Y. 2005) .......................................................................................................................7, 8

*Mayor of Philadelphia v. Educ. Equal. League*, 415 U.S. 605 (1974) ........................13

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) ....................4

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*, __ Fed.Appx. __, 2011 WL 2176152 (2d Cir. June 6, 2011) (summary order) ......................................................5

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*¸ __ F.3d __, 2011 WL 2640579 (2d Cir. July 7, 2011) ...........................................................................................4, 5, 6, 10

*Newport Ltd. v. Sears, Roebuck and Co.*, 941 F.2d 302, 308 (5th Cir. 1991) ...............18

*Perez v. Ortiz*, 849 F.2d 793 (2d Cir. 1988) ...........................................................13, 14

*Quantum Tech. Partners II, L.P. v. Altman Browning & Co.*, 2008 WL 4525769 (D. Ore. Oct. 2, 2008), *aff'd* 2011 WL 2214659 (9th Cir. June 7, 2011) (unpublished mem.) .............................................................................................10

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)................................................................3

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008)...........................................11

*Schrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995)..................................................2

*SEC v. Zandford*, 535 U.S. 813 (2002) ...............................................................10

*Sells v. Zions First Nation Bank*, No. 05 Civ. 0684, 2006 WL 322469 (D. Ariz. Feb. 9, 2006) ...............................................................................................6

*Snider v. Melindez*, 199 F.3d 108 (2d Cir. 1999).......................................................13

*Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 760 F.2d 1347 (2d Cir. 1985), *aff'd*, 476 U.S. 409 (1986)................................................................14, 15

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1968).................................................15, 16, 18, 20

*United States v. Hernandez*, __ F.3d __, 2011 WL 3673042 (10th Cir. Aug. 23, 2011) ................................................................................................4

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992).......................1, 2

*Williams v. Citigroup Inc.*, __ F.3d __, 2011 WL 3506099 (2d Cir. Aug. 11, 2011).............11, 12

**Statutes**

18 U.S.C. § 1961(1) ............................................................................................... 5

18 U.S.C. § 1962.....................................................................................................4

28 U.S.C. § 1367(c)(3)............................................................................................ 14

28 U.S.C. § 1441(a) ............................................................................................... 23

29 U.S.C. § 1144(a) ............................................................................................... 23

Employee Retirement Income Security Act of 1974 § 3(21)(A), 29 U.S.C. § 1002(21)(A)........ 23

Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829............. passim

Private Securities Litgation Reform Act of 1995, § 107, Pub. L. 104-67, 109 Stat. 737 ....... 4, 5, 6

Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737 ............... passim

Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*............. passim

Securities Exchange Act of 1934, § 10(b), 48 Stat. 881, 15 U.S.C. § 78j(b) ................ 8

## Rules

FED. R. APP. P. 4 ............................................................................................................. 1

FED. R. CIV. P. 15(a)(2) ................................................................................................ 11

FED. R. CIV. P. 7(b)(1)(C) ........................................................................................... 14

FED. R. CIV. P. 59(e) ............................................................................................... 1, 11

FED. R. CIV. P. 60(b) .............................................................................................. 1, 11

FED. R. CIV. P. 7 ......................................................................................................... 14

INDIV. PRAC. (HON. WILLIAM H. PAULEY III) 3(A) ...................................................... 1

INDIV. PRAC. (HON. WILLIAM H. PAULEY III) 3(A)(i) .................................................. 1

S.D.N.Y. LOCAL CIV. R. 6.3 ............................................................................... 1, 12, 14

## Legislative Materials

H.R. Rep. No. 104-369 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.C.A.N. 730 ..................... 6

S. REP. NO. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 ................................. 6

## Other Authorities

28 U.S.C. § 1367 Practice Commentary ....................................................................... 2

Interpretive Bulletin  75-8, 40 Fed. Reg. 31,598 (Dep't of Labor July 28, 1975) ........................ 23

60709/00065453

Plaintiff[1] submits this Memorandum of Law for reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) and Local Civil Rule 6.3, seeking review of this Court's Memorandum and Order [ECF Doc. 166] dismissing Plaintiff's claim under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and declining supplemental jurisdiction over Plaintiff's remaining state-law claims, *Gilmore v. Gilmore*, 2011 WL 3874880 (S.D.N.Y. Sept. 1, 2011) ("*Gilmore II*"), as well as the judgment entered September 6, 2011 [ECF Doc. 168] (the "Judgment").  Plaintiff also alternatively seeks vacatur of the Judgment and leave to replead.[2]

## I.        Preliminary Statement

Plaintiff seeks reconsideration "to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

The Court erred by dismissing Plaintiff's RICO claim as barred by the Private Securities Litigation Reform Act of 1995 ("PSLRA") because RICO and the PSLRA's legislative history do not permit the Court to disregard validly pleaded and non-securities related predicate acts, which are *not* proscribed by the PSLRA, in determining whether Plaintiff has a RICO claim.[3]  Specifically, Defendants' alleged *conduct* from 1994-1999 in taking secret fees in connection with Covington's corporate acquisitions *indisputably has nothing to do with the purchase or sale of securities* and amply supports Plaintiff's RICO claim.  At a minimum,

_____

[1] Unless otherwise indicated, all capitalized terms shall have the meanings ascribed to them in Plaintiff's pretrial motion papers.

[2] Plaintiff is aware of this Court's Individual Practice 3(A), requiring a pre-motion conference before filing a motion, but submits that since motions for reconsideration have a jurisdictional time limit, FED. R. APP. P. 4, this Reconsideration Motion with an alternative request for leave to replead and/or amend qualifies for this Court's exemption to the pre-motion conference requirement under Individual Practice 3(A)(i).

[3] Plaintiff accepts, for purposes of this motion only, that Covington stock and CIRS ownership interests constitute "securities", and that the Court correctly excused Defendants' failure to raise the PSLRA until after discovery closed, and reserves the right to raise these issues on appeal.

Plaintiff should be permitted to replead by removing any reference to conduct arguably "in connection with" securities transactions, an amendment that could not prejudice Defendants.

Moreover, assuming that the entire RICO claim was properly dismissed, reconsideration should be granted regarding this Court's *sua sponte* dismissal of all state-law claims without providing Plaintiff notice and an opportunity to be heard, an abuse of discretion under settled Second Circuit precedents. The Court's declination of supplemental jurisdiction contradicts both the Practice Commentary to § 1367 as well as the *Cohill* factors weighing in *favor* of exercising supplemental jurisdiction, including that the parties expended significant resources in the litigation, a pretrial order has been prepared, a substantial federal question under ERISA is presented by at least one of Plaintiff's state-law claims, a federal Receiver has been appointed, and a trial date loomed just days away when the Court dismissed the RICO claim.

## II.    Legal Standard on Motion for Reconsideration

Reconsideration is appropriate "where a court overlooks controlling decisions or factual matters that were put before it … and which, had they been considered, might have reasonably altered the result…." *Banco de Seguros Del Estado v. Mutual Marine Offices, Inc.*, 230 F.Supp.2d 427, 428 (S.D.N.Y. 2002) (citation omitted); *see Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995);.*Virgin Atl.*, 956 F.2d at 1255 (quotation omitted).

Although "[s]uch a motion cannot assert new arguments or claims which were not before the court on the original motion[,]" *Eatoni Ergonomics, Inc. v. Research in Motion Corp.*, No. 08 Civ. 10079 (WHP), 2011 WL 3792814, at *1 (S.D.N.Y. Aug. 25, 2011), "[a] party may … introduce relevant authority that was not before the…court when it initially ruled…." *Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.*, 555 F.Supp.2d 335, 338 (E.D.N.Y. 2008).

### III.   Argument

**A.   The Court Erred By Concluding That If Two Of Four Fraudulent Schemes Alleged Conduct That Would Be Actionable As Securities Fraud And Thus Cannot Be Relied Upon To Establish A RICO Violation, The RICO Claim Is Barred By The PSLRA—Even If The Other Schemes Are Independent, Concededly Do Not Involve Securities Transactions, And State A Valid Pattern Of Racketeering Activities.**

The issue is whether a civil RICO claim that relies partially, but not entirely, upon conduct pled as predicate acts that would have been actionable as securities fraud, requires dismissal of the *entire* RICO claim per the PSLRA, where the remaining non-securities related conduct would otherwise suffice to state a claim.  This Court erroneously ruled that the PSLRA requires dismissal of the *entire* RICO claim, because various "components" of the allegations include conduct that would have been actionable as securities fraud, *Gilmore II*, at *6, and, "Plaintiff's over-arching theory … is that [Defendants] engaged in various plots to loot Covington and the other family corporations.  That conduct counts as a single scheme, and the securities aspects of the fraud must be aggregated with the non-securities aspects." *Id.*  The plain language of the statute and applicable case law mandate a different result.

> ### 1.   *The Plain Language of RICO, As Amended By The PSLRA, Compels The Conclusion That Only Predicate Acts Based Upon Conduct That Could Be Actionable As Securities Fraud Are Barred By The PSLRA, Not That A Claim Based Upon Both Securities And Non-Securities Conduct Is Necessarily And Completely Barred As A Matter Of Law.*

The starting point in statutory construction is the language itself.  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell, J., concurring). "If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993) (citations omitted).  "Because the statutory language [of RICO] is clear, there is no need to … [consider] arguments based on statutory purpose, legislative history, or the

rule of lenity." *See Boyle v. United States*, 129 S.Ct. 2237, 2246 (2009); *cf. MLSMK Inv. Co. v. JP Morgan Chase & Co.¸* __ F.3d __, 2011 WL 2640579, at *5 (2d Cir. July 7, 2011).

RICO's civil action provision states, "Any person injured in his business or property by reason of a violation of section 1962 … may sue therefor in any appropriate United States district…, *except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962*." 18 U.S.C. § 1964(c) (emphasis added).  In other words, the PSLRA "removed securities fraud as a predicate act under RICO."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 472 (2006).

As originally enacted, 18 U.S.C. § 1964(c) thus created a general rule: any person could bring a civil RICO claim in federal court if injured in his business or property so long as the injury was "by reason of" a violation of 18 U.S.C. § 1962.  However, in 1995, Congress, "targeted … perceived abuses of the class-action vehicle in litigation involving nationally traded securities[,]" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006), by enacting the PSLRA, which precludes a RICO plaintiff from "rely[ing] upon any conduct that would have been actionable as" securities fraud.  *Id.* § 107.

The statute, however, does not reveal any intent to strip plaintiffs *in toto* of the right to bring a RICO claim involving conduct that would otherwise *not* be actionable as securities fraud, if plaintiffs *also* happened to plead conduct actionable as securities fraud.  The language merely limits the type of *conduct* upon which a plaintiff may rely.

When a statute grants a general power and then qualifies it with the phrase "except that", the general power remains intact *save for the limitation* imposed by the "except that" clause.  *See*, *e.g.*, *United States v. Hernandez*, __ F.3d __, 2011 WL 3673042, at *2 (10th Cir. Aug. 23, 2011) (citations omitted).  Thus, the phrase "except that" indicates that the balance

4

of RICO's remedial structure remains intact, *save for* the removal of conduct that could have been actionable as securities fraud from the laundry list of predicate acts.  *See* 18 U.S.C. § 1961(1).  Thus, a plaintiff may establish a claim upon allegations of conduct *not* actionable as securities fraud so long as any alleged conduct in connection with securities fraud is disregarded.

> **2.      *The Proper Inquiry, According To The Second Circuit And Every Other Circuit To Consider The Issue, Is Whether The Allegations That Form The Basis For A Particular Predicate Act Occur In Connection With Securities Fraud,* Not Whether Any *Of The Predicate Acts Occur In Connection With Securities Fraud.***

The statutory language thus requires the Court to consider whether the non-securities related conduct—the predicate acts alleged to have occurred in connection with Southbridge's secret finder's fees from 1994-1999—was otherwise sufficient to establish the elements of a civil RICO claim.  This analytical framework is consistent with the plain language of § 1964(c) and the reasoning of the Second Circuit's recent decision in *MLSMK*.[4]

In that case, involving the Madoff Ponzi scheme, plaintiffs filed a RICO claim and several related state-court causes of action against JP Morgan Chase, essentially alleging that Chase knowingly conspired with Madoff by continuing to provide him with banking services, even after Chase allegedly was alerted to the fraudulent conduct that was occurring.  *MLSMK*, 2011 WL 2640579, at *3.  The Second Circuit affirmed the dismissal of the state-law claims, *see MLSMK Inv. Co. v. JP Morgan Chase & Co.*, __ Fed.Appx. __, 2011 WL 2176152, at *2-*3 (2d Cir. June 6, 2011) (summary order); and, in a separate opinion, affirmed dismissal of the RICO claim as barred by Section 107 of the PSLRA.  *MLSMK*, 2011 WL 2640579, at *4.  Among other things, the Second Circuit adopted the reasoning of courts that had relied upon the PSLRA's

---

[4] As noted above, the Supreme Court has stated that the PSLRA merely "removed securities fraud as a predicate act under RICO."  *Anza*, 547 U.S. at 472.  The Supreme Court did *not* state that the PSLRA bars *all* RICO *claims* containing "components" that could have been actionable as securities fraud.

legislative history to conclude that Congress' intent was "'to eliminate securities fraud as a predicate act of racketeering in a civil RICO action.'"  *Id.* at *5 (quoting S. Rep. No. 104-98, at 19 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 698).[5]  Critically, in a footnote rejecting plaintiffs' argument that the conduct at issue was not actionable securities fraud because it was not integrally related to the purchase and sale of securities, the Circuit noted that "the question is not whether a plaintiff can state a claim under a non-securities-related predicate act, but ***whether the allegations that form the basis of <ins>that</ins> predicate act occur in connection with securities fraud[.]***"  *Id.* at *8 n. 11 (emphasis added) (quoting *Sells v. Zions First Nation Bank*, No. 05 Civ. 0684, 2006 WL 322469, at *10 (D. Ariz. Feb. 9, 2006)).  In other words, the proper analysis asks whether the alleged conduct underlying *a particular predicate act* occurred in connection with securities fraud, *not* whether the RICO claim *in toto* contains *any* allegations of prohibited securities fraud predicate acts.  Indeed, this is precisely the rule adopted by each of the Circuit Courts of Appeals to have considered the issue.  *See Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999); *Bixler v. Foster*, 596 F.3d 751, 760 (10th Cir. 2010); *Howard v. America Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000), *cert. denied*, 531 U.S. 828 (2000).

Here, upon finding that the predicate acts involving Plaintiff's forfeited right-of-first-refusal and inter-company claims were barred by the PSLRA, the Court should have analyzed whether the *remaining* predicate acts—specifically, the ones from 1994-1999 in

---

[5] Likewise, the Second Circuit found persuasive the House's Conference Committee's Report for Section 107 of the PSLRA, which stated that "Congress 'intend[ed]' that the section would 'eliminate securities fraud as a predicate offense in a civil RICO action,' and would bar a plaintiff from 'plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO *if* such offenses are based on conduct that would have been actionable as securities fraud.'"  *MLSMK*, *supra*, at *8 (emphasis added) (quoting H.R. Rep. No. 104-369, at 47 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.C.A.N. 730, 746).

connection with Southbridge's secret finder's fees—sufficed on their own terms to establish a prima facie RICO claim. *See, e.g.*, *Howard*, 208 F.3d at 749; *Andrea Doreen Ltd. v. Bldg. Material Local Union 282*, 299 F.Supp.2d 129, 156-58 (E.D.N.Y. 2004) (*denying* in part a motion for summary judgment to dismiss the RICO claims, and holding that although 12 of 16 predicate acts were barred, the *remaining* predicate acts sufficed to establish open-ended continuity). And as set forth in opposition to Defendants' summary judgment motion, Plaintiff's allegations in connection with the 1990s conduct, if proven, suffice to establish a prima facie entitlement to relief under RICO. *See* Pl. SJ Opp Mem. [ECF Doc. 145], at 2-5, 17-18, 25-28.

   3.   ***The Court Should Have Separated The Securities Fraud From The Non-Securities Conduct. The Cases Holding That "Surgical Presentation" Offends The PSLRA Uniformly Involve Allegations*** <u>***Entirely***</u> ***Actionable As Securities Fraud, Unlike Here, Where This Court Held That Plaintiff's Claims Include*** <u>***Allegations Of Conduct Having No Connection To Securities Transactions.***</u>

   This Court held that Plaintiff's claims must be considered as one scheme because he pled an "over-arching theory … that [Defendants] engaged in various plots to loot Covington and the other family corporations. That conduct counts as a single scheme, and the securities aspects of the fraud must be aggregated with the non-securities aspects." *Gilmore II*, at *6 (quoting, *inter alia*, *Ling v. Deutsche Bank, AG*, No. 04 Civ. 4566 (HB), 2005 WL 1244689, at *3 (S.D.N.Y. 2005), for the proposition that "[e]ssentially, the Court must … not parse out various steps. If one predicate acts alleges breaches of duty coincident with securities transactions, the whole scheme is subject to the PSLRA bar."). However, the rule articulated in *Ling*, based upon decisions such as *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F.Supp.2d 363 (S.D.N.Y. 2004), and *Gatz v. Ponsoldt*, 297 F.Supp.2d 719 (D. Del. 2003), simply has no application here.

In *Ling*, Judge Baer was presented with a single fraudulent tax shelter scheme—not multiple and independent fraudulent schemes like those here.  The *Ling* plaintiffs alleged that defendants' participation in manufacturing and marketing tax shelters, and then fraudulently inducing plaintiffs to enter the transactions, including by issuance of tax advisory opinion letters that were billed at an allegedly excessive rate, constituted a civil RICO violation.  *Id.* at *2.

Judge Baer granted the Defendants' motion to dismiss the RICO claim pursuant to the PSLRA, holding that "[t]o determine whether an alleged predicate act in a civil RICO claim is in connection with the purchase or sale of securities… the Court must focus its analysis on ***whether the conduct pled <u>as the predicate offenses</u> is 'actionable' as securities fraud.***" *Ling*, 2005 WL 1244689, at *3 (emphasis added) (citing *Bald Eagle*, 189 F.3d at 330).  To determine whether the conduct pled was "actionable", Judge Baer applied the Second Circuit's test interpreting the meaning of the "in connection with" requirement of Section 10(b) of the Securities Exchange Act of 1934: "the requirement is satisfied when the securities transactions and breaches complained of ***coincide <u>and are not independent events</u>.***" *Dabit v. Merrill Lynch*, 395 F.3d 25, 49 (2d Cir. 1995) (emphasis added), *rev'd on other grounds,* 547 U.S. 71 (2006).  Judge Baer concluded that the securities transactions were *not* "independent" of the non-securities transactions, and on *that* basis only, held the plaintiffs' claims barred.  *Ling*, at *4.

Likewise, under nearly identical facts, Judge Scheindlin concluded that the allegations in *Seippel* described "a single fraudulent scheme 'in connection with' the sale of [plaintiff's] stock."  *Id.* at 373.

Thus, the *Seippel* and *Ling* plaintiffs each alleged ***just one fraudulent scheme, <u>which at its core involved securities-related conduct</u>***.  Here, by contrast, Plaintiff has pled

multiple and *independent* fraudulent schemes varying in nature and time, including at least two that do not even arguably have any connection at all with securities fraud.[6]

Also distinguishable is *Gatz v. Ponsoldt*, 297 F.Supp.2d 719 (D. Del. 2003), relied upon by this Court, *see Gilmore II*, at *6, since the *Ponsoldt* court expressly held that *all* of the transactions at issue were securities transactions. *Id.* at 730-31 ("The predicate acts consist of the use of the mails and wires to conduct a series of transactions, **each involving or related to covered securities.**") (emphasis added); *and see id.* at 731 n. 19.

### 4. Every Court To Consider The Matter Has Ruled That Disaggregation Of Non-Securities Conduct Is Appropriate When Multiple Schemes Form The Basis Of The Plaintiffs' RICO Claims.

Although only a handful of courts have considered the reach of the PSLRA in cases of RICO cases involving mixed allegations of conduct "in connection with" securities fraud as well as non-securities related acts, those that have addressed the issue *uniformly* hold that *only* the predicate acts based upon securities fraud are barred by the PSLRA, *not* the entire RICO claim.[7] Thus, Judge Scheindlin, in granting leave to replead rather than resorting to

---

[6] *See* Plaintiff's Summary of Claims and Defenses (Itkowitz Decl. Ex. "2") [ECF Doc. 113-2], at 2-4 (finder's fee scheme from 1994-1999; excessive overbilling from 2006-2009).  The fact that the 1990s transactions have a loose factual nexus in the most general sense to those events taking place in the 2000s simply does not imply that the fraudulent scheme to take finder's fees in the 1990s was "in connection with" a securities transaction in 2005 or 2006, and not even Defendants urged such an expansive interpretation of the PSLRA on their motion.  Nor do we see how Plaintiff's general theory that the various schemes [plural] are all united by a common thread (namely, Defendants' wrongful intent to loot the Gilmore Companies), transforms *all* the conduct alleged into a single "scheme" [singular], which then may be slayed because "components" could have been actionable as securities fraud.

[7] *See Howard*, 208 F.3d at 749-51 (holding that predicate acts based upon conduct that could have been actionable as securities fraud were barred by the PSLRA, but then reaching the issue of whether the *remaining* conduct underlying the "non-securities" schemes formed the basis of a RICO pattern); *Blythe v. Deutsche Bank, AG*, 399 F.Supp.2d 274, 282 (S.D.N.Y. 2005) (dismissing with prejudice *some*, but not all, of plaintiffs' RICO claims as barred by the PSLRA, and granting leave to replead the non-securities acts);  *Quantum Tech. Partners II, L.P. v. Altman Browning & Co.*, 2008 WL 4525769, at *11 (D. Ore. Oct. 2, 2008) (holding that "portions" of

9

outright dismissal of a RICO claim with prejudice, observed that, "[w]hile acts undertaken to induce a plaintiff to engage in a securities-based COBRA Strategy are actionable as securities fraud, acts undertaken to induce a plaintiff to engage in a COBRA Strategy in which securities played no part are not actionable as securities fraud." *Blythe*, 399 F.Supp.2d at 282-83.[8]  Here, Plaintiff *has* alleged at least two independent schemes.[9]  This Court's ruling—that if "components" of a RICO claim are barred by the PSLRA, then the whole claim is barred, even if the non-securities conduct could stand on its own to establish all the elements of the RICO claim—contradicts these decisions and implicitly this Circuit's decision in *MLSMK*.[10]  Accordingly, reconsideration should be granted, and the RICO claim reinstated.

---

plaintiffs' RICO claim were barred by the PSLRA but reaching the question of whether the balance of the predicate acts alleged were sufficient to establish a RICO claim), *aff'd* 2011 WL 2214659 (9th Cir. June 7, 2011) (unpublished mem.).  *See generally Andrea Doreen,* 299 F.Supp.2d at 156-58.

[8] In granting leave to replead to "disaggregate" the non-securities predicate acts, Judge Scheindlin noted that acts of fraud not involving securities would be "independent [albeit similar] events" to those involving securities, even if those acts "coincide[d]", and accordingly the non-securities fraud would "therefore not be 'in connection with' a securities transaction." *Id.* at 282 n. 47 (citing *SEC v. Zandford*, 535 U.S. 813, 820 (2002)).  Indeed, it was on *this* basis that we urged at oral argument that the 1990s claims be "disaggregated" from the 2000s claims if the Court was inclined to conclude that the latter transactions were barred by the PSLRA.

[9] *See, e.g.*, Pl. SJ Opp. Mem. [ECF Doc. 145], at 25 ("Plaintiff has alleged *two different schemes*…."); *id.* at 25-26 ("[W]ith respect to the 2004-2009 period, Plaintiff plainly has alleged a *multitude of different fraudulent schemes*…."); *id.* at 26 ("Plaintiff has established the 'relatedness' of the predicate acts for *each* of the RICO *schemes*.") (emphasis added).  The facts in the record are unmistakably consistent with one scheme to take secret finder's fees, stretching from 1994-1999, and another distinct set of schemes to seize control of the Gilmore Companies and drain them of their assets, taking place from 2004-2009.  Temporally and logically, the schemes from these two time periods, though both set against the general backdrop of the Gilmore siblings' interactions regarding the family businesses, are independent from each other.

[10] The *MLSMK* panel cited the *Howard* decision favorably.  *See MLSMK*, at *9.

**5.      At A Minimum, And In The Alternative, Plaintiff Seeks Leave To Replead His RICO Claims To Remove Any Reliance Upon Components That Arguably Involve Securities Transactions.**

In the alternative, leave to replead should be granted, *see, e.g.*, *Blythe*, *supra*, especially since Defendants did not even plead the PSLRA as a defense until submission of the proposed Pretrial Order.[11]

"[T]he Federal Rules of Civil Procedure provide that courts 'should freely give leave' to amend a complaint 'when justice so requires.'" *Williams v. Citigroup Inc.*, __ F.3d __, 2011 WL 3506099, at *3 (2d Cir. Aug. 11, 2011) (quoting FED. R. CIV. P. 15(a)(2)).  Although a post-judgment motion for leave to amend requires a district court to temper "Rule 15's liberality … by considerations of finality[,]" *id.*, this Circuit has now squarely held that it *is* "appropriate in a proper case to take account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Id.* at *4 (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)); *see Foman v. Davis*, 371 U.S. 178, 179, 182 (1962) (construing plaintiff's *post-judgment* motion to vacate as motion under Rule 59(e) and reversing district court's denial of Rule 15 motion, based upon an "alternative theory for recovery" predicated upon the same underlying facts, as an abuse of discretion).[12]   A district court abuses its discretion by denying leave to replead merely because the motion was not made in response to a motion to dismiss.  *Williams*, at *5 (citing *Foman*).

---

[11] In particular, Defendants never previously had alleged that Covington stock or CIRS membership interests were "securities".

[12] Procedurally, "[a] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b)." *Ruotolo*, 514 F.3d at 191.

Here, a proposed pleading[13] would substantively be identical to the Second Amended Complaint except that the RICO claim would be modified to be predicated solely upon the non-securities conduct in the 1990s.  Defendants have conceded, and this Court in any event concluded, that *those* activities are not barred by the PSLRA on their own, and therefore, if Plaintiff's RICO "scheme" is deemed amended to cover only the 1990s predicate acts, the Court's basis for dismissal will vanish.  Nor would such a pleading allege new facts, nor be in any way inconsistent with those already alleged in the existing pleading; thus, the usual concerns of prejudice, futility, and/or bad faith in connection with a motion to amend are totally absent here.  For that matter, in April 2010, when Plaintiff moved to amend his Complaint to include the secret finder's fee transactions, the Court directed that Defendants could oppose the proposed amendment, but if they chose to do so, *they could not later bring a motion for summary judgment.*  Defendants elected to oppose amendment *but never raised the PSLRA bar.*  They should not be permitted to profit from their invocation of the PSLRA defense in their summary judgment motion, *after* the close of discovery, without Plaintiff being given the opportunity to cure the defect in his pleading.  Thus, at the very least, leave to replead should be granted.

**B.    Even Assuming That Plaintiff's RICO Claim Was Properly Dismissed, The Court Nonetheless Abused Its Discretion When, *Sua Sponte* And Without Providing Plaintiff With An Opportunity To Be Heard, It Declined To Exercise Supplemental Jurisdiction Over The Remaining State Law Claims, Especially Since Trial Was Less Than Two Weeks Away, And Neither Novel Nor Complex State-Law Issues Were Present.**

Even if this Court adheres to its decision to dismiss Plaintiff's RICO claim, dismissing the pendent state-law claims was nevertheless inappropriate.

---

[13] The fact that this request for leave to amend is being made concurrently with a motion for reconsideration precludes the attachment of any affidavits annexing new materials.  S.D.N.Y. Loc. Civ. R. 6.3; *Williams*, *supra*, at *5 n. 3.  If the Court so permits it, Plaintiff will promptly file a Proposed Third Amended Complaint that reflects the exact changes proposed.

1.     **The Court Erred By Not Providing Notice To Plaintiff Of Its Intention To Decline Supplemental Jurisdiction Over Plaintiff's State Law Claims And An Opportunity To Respond.**

A court's *sua sponte* decision not to exercise pendent jurisdiction over state claims is an abuse of discretion when the plaintiff is not afforded notice and an opportunity to be heard on the issue, or an opportunity to amend the complaint. *See Perez v. Ortiz*, 849 F.2d 793, 796 (2d Cir. 1988).[14]  This is true even in the context of supplemental jurisdiction, because the "view of pendent jurisdiction as something akin to subject matter jurisdiction that may be raised *sua sponte* at any stage and that is capable of aborting prior federal court proceedings is a misreading of the law." *Mayor of Philadelphia v. Educ. Equality League*, 415 U.S. 605, 627 (1974).  Indeed, "[t]he discretionary aspect to supplemental jurisdiction is waivable." *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996) (citation omitted).

Here, the record demonstrates that Defendants had *not* moved for dismissal of the entire case and had *not* asked the Court to decline supplemental jurisdiction, thus *waiving* such a request.  On the contrary, their Notice of Motion for Summary Judgment [ECF Doc. 124] sought "[s]ummary judgment dismissing the RICO cause of action, in its entirety, and granting summary judgment dismissing the common law fraud cause of action to the extent it involves equity interests…." *Id.* at 2.  Substantively identical relief was sought in Defendants' Memorandum of Law in Support [ECF Doc. 120], at 30, and in their Reply Memorandum of Law [ECF Doc. 158], at 1-2.  The *only* reference to dismissal of the state-law claims in Defendants' voluminous submissions is a single sentence in Defendants' opening memorandum, buried in a section dealing with Plaintiff's RICO conspiracy count: "Upon granting summary

---

[14] *See also Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir. 1999) (distinguishing between *sua sponte* and "spontaneous" dismissal); *Day v. McDonough*, 547 U.S. 198, 210 (2006) ("[B]efore acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions.").

judgment in favor of Defendants dismissing the RICO claim, no federal question or matter of

diversity jurisdiction will remain to be tried and the Court may, in its discretion, remand the

matter to state court to be resolved there.  *See* 28 U.S.C. § 1367(c)(3)."  Def. SJ Mem. [ECF

Doc. 120], at 23.  Likewise, Defendants' counsel did not ask this Court to decline to exercise

supplemental jurisdiction at oral argument.  Indeed, Plaintiff noted that Defendants had waived

the issue by utterly failing to brief it, Pl. SJ Opp. Mem. [ECF Doc. 145], at 6 n.5, and

Defendants' reply did not dispute the point.  Defendants' vague and incorrect[15] sentence about

what the Court "may" do does not meet the minimal prerequisites of Rule 7, which requires any

motion to "state the relief sought."  FED. R. CIV. P. 7(b)(1)(C); *see Square D Co. v. Niagara

Frontier Tariff Bureau, Inc.*, 760 F.2d 1347, 1364 (2d Cir. 1985), *aff'd*, 476 U.S. 409 (1986).

      The Court, however, *sua sponte* and without warning, reached the issue of

whether in its discretion it should decline supplemental jurisdiction over the pendent state-law

claims, and under the *Cohill* factors, found that dismissal was appropriate.  *Gilmore II*, at *11-

*13.  While Plaintiff does not dispute that the Court may *sua sponte* dismiss a case, due process

requires fair notice and an opportunity to be heard, as well as an opportunity to move to amend

the complaint in an attempt to cure the defect.  *See Perez*, 849 F.2d at 796.  The Court's failure to

provide fair warning of its intended actions gave Plaintiff no opportunity to produce evidence

demonstrating that the *Cohill* factors are not present, nor is a full opportunity afforded by this

motion for reconsideration.  *See* S.D.N.Y. LOC. CIV. R. 6.3 ("No affidavits shall be filed by any

party unless directed by the Court.").[16]  Consequently, Plaintiff has been hamstrung in his ability

---

[15] This Court, of course, lacked the power to *remand* the case, since the action was commenced
in federal court originally, not in state court and then removed.  *Cf.* 28 U.S.C. § 1441(a).

[16] Among other things, the evidence Plaintiff could have submitted in opposition would have
included legal bills demonstrating the costs incurred in preparing the pretrial order, briefing four
dispositive and evidentiary motions, and otherwise preparing for trial; bills from experts, who

to *prove* (rather than simply argue) that the *Gibbs* factors of economy, convenience, and fairness overwhelmingly weigh in favor of retaining supplemental jurisdiction.  Thus, the Court's *sua sponte* and *spontaneous* decision not to retain supplemental jurisdiction over the state-law claims, when Defendants had not even requested dismissal on such grounds, is sufficient basis, alone, for reconsideration and vacatur of the Judgment as a denial of due process.  *See Square D*, 760 F.2d at 1365 (quoting *Lewis v. New York*, 547 F.2d 4, 5-6 n. 4 (2d Cir. 1976)).

   **2.   *The Court Further Erred By Overlooking Second Circuit Decisions Uniformly Holding That The* Gibbs-Cohill *Factors Weigh In Favor Of Exercising Supplemental Jurisdiction Under Facts Indistinguishable From This Case.***

   "'[D]istrict courts [should] deal with cases involving pendent claims in the manner that *best* serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.'"  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997) (emphasis added) (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357 (1988)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1968).

   Here, this Court overlooked settled Second Circuit authorities holding that a district court *should* exercise its supplemental jurisdiction over state-law claims even if all federal claims have been dismissed, if a trial date has already been set and neither novel nor complex state law issues need be resolved.  *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990); *see also Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994); *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 546 (2d Cir. 1989).  "Thus, if the dismissal of the federal

---

were being readied for trial; affidavits regarding the substantial inconveniences incurred in connection with scheduling a host of witnesses for trial, including Plaintiff himself, a professor who was obligated to advise his employer that he would miss two weeks of work due to the scheduled trial; and affidavits regarding the current state of docket congestion in New York State Supreme Court, New York County.

claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair.  Nor is it by any means necessary.'"  *Nowak*, 81 F.3d, at 1992 (emphasis added) (citations and quotation marks omitted); *see also In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 510 F.Supp.2d 299, 303 (S.D.N.Y. 2007) (holding that at the "advanced" stage of litigation and with a trial date already set, "concerns with economy and efficiency are more than compelling").

Thus, in *Nowak*, this Circuit held that the lower-court judge, who had presided over the case for over a year and dismissed the federal claim "only nine days before it was set for trial, acted well within his discretion in exercising supplemental jurisdiction over [plaintiff's] related state causes of action."  *Id.* at 1992.  Likewise, in *Raucci*,, the Second Circuit held that the retention of supplemental jurisdiction under the *Cohill* and *Gibbs* factors was appropriate where, by the time the federal claims had been dismissed, discovery was complete, the court had decided multiple dispositive motions, and the case was ready for trial, with the state-law claims involving only settled principles rather than novel legal issues implicating state policy.  *Raucci*, 902 F.2d at 1055.  This lawsuit plainly is on all fours with both *Nowak* and *Raucci*.

*Valencia ex rel. Franco v. Lee*, 316 F.3d 299 (2d Cir. 2003), a decision cited by this Court, is not to the contrary.  There, the Second Circuit reversed the lower court's exercise of supplemental jurisdiction as an abuse of discretion, even though trial had already been conducted, *because the case raised novel issues of New York State law implicating state governance policies, and plaintiff had disclaimed all federal claims two years earlier. Id.* at 306-07.  None of the parties in this litigation, by contrast, contend that novel or unresolved state law issues are raised by the claims or counterclaims.  *Cf. Bray v. City of New York*, 346 F.Supp.2d

16

480, 492 (S.D.N.Y. 2004) (Pauley, D.J.) (declining to exercise supplemental jurisdiction because "the need to adjudicate novel and complex state law issues militates against" doing so).  On the contrary, Plaintiff's right-of-first-refusal fraud claim is based upon Defendants' misrepresentations of ERISA fiduciary liability, and thus will require jury instructions regarding the import of ERISA; this fact weighs in *favor* of retaining jurisdiction, not declining it.  And, the possibility of ERISA *preemption* of state-law claims further suggests that the *Valencia* decision weighs in favor of, not against, exercising supplemental jurisdiction.[17]

Indeed, the Court, in relying upon *Valencia*, stated that "a court should generally retain jurisdiction if the state claims implicate preemption issues, the federal claims are **voluntarily** dismissed days before trial, or the court has decided multiple prior dispositive motions."  *Gilmore II*, at *7 (emphasis added).  The Court gave no reasoned explanation why, on the one hand, a *voluntary* dismissal of a federal claim just days before trial is a valid reason for exercising supplemental jurisdiction, but a *judicial* dismissal of the last federal claim just days before trial, on the other hand, is not.  The absence of an explanation on this distinction, alone, militates in favor of reconsideration.  *See*, *e.g.*, *United States v. Skys*, 637 F.3d 146, 158 (2d Cir. 2011).

Although the Second Circuit has never squarely addressed the issue of whether a district court exceeds its discretion by *refusing* to exercise supplemental jurisdiction when the parties have expended substantial resources, a trial date is set, and no novel state-law issues are present, the Fifth Circuit has repeatedly held that a district court's refusal to exercise supplemental jurisdiction when a trial date is set, and the parties have expended substantial

---

[17] *See*, *e.g.*, *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56 (1995) (whether a state claim "relate[s] to" any employee benefit plan and thus is preempted requires looking to the structure and objectives of ERISA).

resources preparing the state-law claims, *is* an abuse of discretion.  *See Brookshire Bros.*

*Holding, Inc. v. Dayco Prod, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (citing, *inter alia*, *Newport*

*Ltd. v. Sears, Roebuck and Co.*, 941 F.2d 302, 308 (5th Cir. 1991)).  Such is the case here, and the

Court should have exercised supplemental jurisdiction to retain the state claims.

    **3.**    ***The* Gibbs-Cohill *Factors Favor Retention Of Supplemental Jurisdiction Here Because Trial Was Just 12 Days Away, No Novel Or Complex Issues Of State Law Are Present, And Complex Issues Of ERISA Law And Preemption Await The Trier Of Law, Whether Here Or In State Court.***

    Although Plaintiff is hampered by his inability to put in proofs on the issue, the

available record nonetheless amply demonstrates that the Court misapplied the *Gibbs-Cohill*

factors in declining to exercise supplemental jurisdiction in this case.

    **a.**    ***The Factors Of Convenience, Economy, And Fairness Are Offended By Forcing The Parties To Restart This Litigation In State Court.***

    The Court did not give appropriate consideration to the "substantial expenditure

in time, effort, and money" expended by the parties in preparing the state-law claims, all of

which overlapped with the RICO cause of action, and did not give due weight to the fact that

enormous inconvenience, duplication of efforts, and unfairness would be done to the parties,

particularly Plaintiff, by dismissing the state-law claims just *12 days* before trial.  The *Gibbs-*

*Cohill* factors of convenience, economy, and fairness squarely weighed in favor of retaining

supplemental jurisdiction.

    *First*, the parties fully briefed and argued a motion to amend that was vigorously

litigated and resulted in a written decision by this Court, *Gilmore v. Gilmore*, 2010 WL 4190211

(S.D.N.Y. Nov. 15, 2010) ("*Gilmore I*").  Although this Court subsequently held that its decision

dismissing Plaintiff's RICO claim resolved the parties' "first dispositive motion", *Gilmore II*, at

*12, the Court's prior decision specifically addressed whether Plaintiff's efforts to add RICO,

breach of fiduciary duty, and fraud allegations based upon Defendants' newly-discovered secret fees arrangement in the 1990s would be "futile". *Gilmore I*, at \*4-\*6 (granting the amendment and holding that the issue presents a "classic jury question"). And importantly, Defendants did *not* oppose Plaintiff's request for amendment on the ground that the PSLRA proscribed the RICO claim. In a very real sense, therefore, Defendants' opposition to Plaintiff's motion to amend was the functional equivalent of a "dispositive motion", since a denial for futility would have been a ruling on the merits.[18]

  *Second*, discovery in this case, which included multiple depositions and voluminous document and ESI productions, closed on February 25, 2011, and certainly had been closed for several months by the time the parties prepared a pretrial order and submitted their summary judgment and *in limine* motion papers. In state court, however, Defendants can readily serve new discovery demands, particularly if any of the allegations in their pleadings are different—or, for that matter, if a New York Supreme Court Justice does not regard this Court's decision as binding regarding the closure of discovery in a subsequent state-court action. While such demands would be baseless, still more motion practice would be needed to halt them.

  *Third*, the parties prepared, at the Court's direction, a 145-page proposed joint pretrial order ("PTO") that detailed the parties' claims, counterclaims, offsets, and defenses; their witness lists, designations of proposed excerpts of deposition excerpt transcripts, and objections thereto; subject-matter jurisdictional statements and statements as to whether a jury would be appropriate; and, most critically, the parties' designations of proposed trial exhibits and objections thereto, including Defendants' excessive designation of approximately 2000 exhibits,

---

[18] This is particularly true where the Court gave the Defendants the choice at the pre-motion conference of *either* opposing Plaintiff's motion to amend *or* consenting and later moving for summary judgment. The Court explicitly advised Defendants that they could *not* do both.

many of which each individually consisted of a substantial number of documents.  There is no

guarantee whatsoever that this pretrial order could be imported wholesale into a state-court

proceeding; on the contrary, the opposite is likely true, since Defendants are likely to seize upon

the Court's ruling that the pleadings "remain in a state of flux," *Gilmore II*, at *12, to inject new

issues, request discovery, and assert the need to use still different documents as exhibits in a

state-court trial.  Redoing this work and requiring a state-court judge to preside over the

assembly of such a pretrial order would be extraordinarily wasteful and completely contrary to

the *Gibbs-Cohill* commonsense notions of the conservation of judicial energies and the

avoidance of multiplicity in litigation.

    *Fourth*, following submission of the PTO, the parties attended a final pretrial

conference on June 16, 2011, at which time the Court, on the record, set down a trial date of

September 12, 2011, gave the parties guidance as to the parameters of such a trial (such as that

each side would have twenty (20) hours to try the case, timed by a chess clock, and that

demonstrative exhibits could be used during opening statements and summation), and also

directed the parties to brief summary judgment and *in limine* motions in the months of July and

August.  Those motions were extremely extensive and required very substantial effort, time, and

money to prepare.  No indication was ever given by the Court, either at the final pretrial

conference or at the oral argument, that the parties should stop preparing for trial or that the

Court was inclined *not* to exercise supplemental jurisdiction over the remaining state-law claims

if the RICO claim fell.  Nor did the Court solicit additional briefing on the issue of whether the

*Cohill* factors militated in favor of or against dismissal of the pendent state-claw claims—an

issue waived by the Defendants and raised *sua sponte* by this Court.  Indeed, Plaintiff had no

possible means of anticipating this outcome, since the Court's Orders and statements from the bench gave only one, unmistakable indication: the parties should prepare for trial.

*Fifth*, the Court did not give proper consideration to the enormous *inconvenience*, not to mention judicial duplication of efforts and possibilities of inconsistent rulings, if this case is re-filed in state court.  Although the Court correctly noted that the parties reside in the same state, the Court's conclusion that the case can be "quickly readied for a trial in state court", *Gilmore II*, at *12, is simply incorrect.  The reality is that this case will take a very long time to take to trial in the best of circumstances, and will require colossal duplication of efforts in terms of preparing pleadings, briefing and arguing dispositive motions, and preparation of *another* pretrial order.  Nor can it be assumed that the parties can simply import most or all of the work done in this lawsuit; the pleadings, according to this Court, are in a "state of flux" (*id.*), and once any additional allegations are inserted into them, Defendants undoubtedly will ask for discovery on such issues—a request a state-court judge may grant, notwithstanding this Court's statement that discovery in *this* case is closed.  Any dispositive motions will require a substantial amount of time to be processed, ultimately assigned an oral argument date, and finally resolved, a delay that not only is greater in New York State courts than it would be in federal courts,[19] but here will be exacerbated by the fact that a New York Supreme Court Justice, no matter how capable, will lack the experience and familiarity with this litigation spanning a 15-year chronology that this Court has.

_____

[19] This Court "*may* take judicial notice of proceedings in other courts." *Hudson Riverkeeper Fund, Inc. v. Harbor at Hastings Assocs.*, 917 F.Supp. 251, 256 (S.D.N.Y. 1996) (emphasis added) (noting that "[a] rocket docket New York does not have … state court actions, throughout the nation, are often a slower paced version of justice than that to which the federal district courts aspire.").  However, Plaintiff's lack of notice of this Court's intention to reach the supplemental jurisdiction question has limited his ability to *prove* the extent to which this Court's conclusion that the case can be "quickly readied" in New York Supreme Court for trial is inaccurate.

*Finally*, this Court gave no consideration to the consequences of its decision to compel Plaintiff to replace the Court's Order, dated August 10, 2010—an Order that restrained Defendants from transferring over $1.5 million in sales proceeds to themselves from CIRS, and appointed Plaintiff as Receiver of Covington—with a different tribunal's injunction.  As this Court knows, just *one day* after this Court rendered its decision, Defendants advised that they intended to seize $151,000 from those funds to repay purported "loans" plus 16% interest, to which Plaintiff had never consented, requiring Plaintiff to make an emergency application for a stay order.  In this Court, Plaintiff needed a two-page letter to articulate the crisis and obtain relief.  In state court, Plaintiff will need substantially more than two pages to do so—after all, the request will be decided by a state-court judge who has *no* familiarity with the case and may not feel bound by this Court's Orders.  It is unclear why, given that this Court has held that Plaintiff has credibly articulated prima facie claims for *three* different fraudulent schemes perpetrated by the Defendants—and that the Courts' prior Orders, including on September 2, 2011, reaffirmed that the sales proceeds should not be transferred to Defendants pending resolution of the litigation—the end result should be reconsideration anew and possible vacatur by a *state-court* judge who undeniably will know nothing about the case file.  That would neither be a "fair" result nor one that has anything to do with "judicial economy".[20]

---

[20] This is hardly a trivial concern.  Indeed, Plaintiff cannot presently confirm whether Defendants are in compliance with this Court's Orders with respect to the escrow funds, because counsel for the Defendants has refused to provide documentation as to the accounts holding the funds and claims that he is not in control of the escrow monies.

**b.      The Comity Factor Weighs In Favor Of Retaining, Not Declining, Supplemental Jurisdiction, Because One Of Plaintiff's Claims Raises A Substantial Question Of Federal Law, And Because A Federal Receiver Was Appointed In This Case.**

Still another compelling reason exists for exercising supplemental jurisdiction over the state-law claims. Contrary to the Court's statement that "this case involves purely state law questions, and does not raise any issues of preemption," *Gilmore II*, at *12, a substantial federal question may well have been raised on the face of the pleadings by Plaintiff's right-of-first-refusal fraud claim.  As alleged in Plaintiff's Second Amended Complaint, Defendants falsely stated that Plaintiff and his siblings faced massive personal liability in connection with the Covington pension plan, thus inducing Plaintiff to waive his valuable right of first refusal. *See* SAC [ECF Doc. 85] ¶¶ 78-83, 138(b), 155(b); Plaintiff's Summary of Claims and Defenses (Itkowitz Decl. Ex. "2") [ECF Doc. 113-2], at 2-3.  Thus, an essential element of Plaintiff's fraud claim—falsity of the statements in question—hinges upon whether the statements made were inconsistent with pension plan fiduciary liability principles, as established by ERISA and interpreted by the Department of Labor.[21]  Whether Plaintiff's fraud claim is expressly or implicitly preempted under 29 U.S.C. § 1144(a) (stating that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan") (emphasis added), is not immediately apparent; thus, it is unclear whether, if Plaintiff were to re-file in state court, Defendants could properly invoke the removal jurisdiction of the federal court in light of the substantial federal question raised by this claim.  28 U.S.C. § 1441(a).  Even if the answer to that question is no, the fact that Plaintiff's fraud claim would require a jury instruction on the

---

[21] Hence, a jury—whether sitting in state or federal court—will need to be instructed on when a member of plan sponsor's board of directors becomes a "fiduciary" of the plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A); *see* Interpretive Bulletin  75-8, 40 Fed. Reg. 31,598 (Dep't of Labor July 28, 1975).

substance of ERISA fiduciary liability, in order to determine whether what Defendants said to Plaintiff and the other shareholders about such supposed liability was true or false, at minimum militates in favor of retaining supplemental jurisdiction.

Comity is further implicated by the appointment of a federal Receiver in this case. As Receiver, Plaintiff has a fiduciary duty to marshal the assets of Covington—namely, the claims from the 1990s for fraud and breach of fiduciary duty, if not civil RICO as well—and has incurred costs ranging from storage costs for 2.5 million pages of documents, to attorney's fees to investigate and vigorously prosecute such claims.[22]  "As a general rule, the expenses and fees of a receivership are a charge upon the property administered." *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994) (citing *Atl. Trust Co. v. Chapman*, 208 U.S. 360, 375-76 (1908)).  Moreover, "[a]s an agent of the court, the receiver has standing to come before the court that appointed it on matters related to the costs relating to administration of the receivership property." *Id.* (citation omitted).  If Plaintiff were to re-file his claims in state court and prevail (assuming that the case could not be removed), a serious conflict could arise between the state and federal courts at the time he seeks to recover the fees and costs incurred in administering the receivership.  Indeed, by dismissing the case, the Court failed to account for the consequences of abruptly dissipating this lawsuit as a valuable asset belonging to a receivership of its own making—a factor that also weighed in favor of continued retention of supplemental jurisdiction over the state claims.

*            *            *

In reaching its prior decisions, this Court has had to become familiar with what is undeniably a complex and lengthy factual history spanning fifteen (15) years, involving a range of disputed transactions, including one particularly "complicated" one. *Gilmore II*, at *4.  The

---

[22] It should be noted that Michael Gilmore, a non-party, remains a 25% stakeholder in Covington.

parties, and judicial economy, are not well served by requiring a state-court judge to relearn all those facts along the way towards taking this case to trial.  Indeed, before a jury could be selected in state court, the parties would have to re-file pleadings, deal with discovery disputes involving new allegations in such pleadings, draft and argue dispositive and evidentiary motions, prepare a brand-new pretrial order, bring a state-court judge and his or her law secretaries up to speed, and so on—matters that, even with extensive cooperation from opposing counsel, could take well over a year before a trial date could be selected.  Notwithstanding this Court's conclusion that the case is "trial ready", Plaintiff has no doubt that Defendants would fight hard to delay the case's ultimate resolution. The case *is* "trial ready" upon resolution of the parties' fully-briefed motions, but only in this Court.  Declining supplemental jurisdiction here would "defeat the commonsense policy of pendent jurisdiction—the conservation of judicial energy and the avoidance of multiplicity of litigation[.]"  *Rosado v. Wyman*, 397 U.S. 397, 405 (1970).  This Court should exercise supplemental jurisdiction and give Plaintiff his day in court.

## IV.   <u>Conclusion</u>

For the reasons stated, Plaintiff's motion for reconsideration should be granted.

Dated:       New York, New York
             September 19, 2011

**ITKOWITZ & HARWOOD**

By: */s/ Jay B. Itkowitz*
    Jay B. Itkowitz (JBI-5349)
    Donald A. Harwood
    Simon W. Reiff
    305 Broadway, 7th Floor
    New York, New York 10007
    (646) 822-1801
    jitkowitz@itkowitz.com
    dharwood@itkowitz.com
    sreiff@itkowitz.com

*Attorneys for Plaintiff David Gilmore*

25